CEMENT- ASBESTOS PRODUCTS
COMPANY, Plaintiff-Appellee,

v.

HARTFORD ACCIDENT AND
INDEMNITY COMPANY,
Defendant-Appellant.

No. 77–1122.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 12, 1978.

Decided Feb. 23, 1979.

Donald Lawrence, Jr., Denver, Colo. (John R. Hickisch, Denver, Colo., with him, on brief), of Weller, Friedrich, Hickisch & Hazlitt, Denver, Colo., for defendant-appellant.

Wiley E. Mayne, Denver, Colo. (Bonnie Starr Mandell, Denver, Colo., with him, on brief), of Holland & Hart, Denver, Colo., for plaintiff-appellee.

Before DOYLE . and LOGAN, Circuit Judges, and STANLEY, Senior District Judge.*

LOGAN, Circuit Judge.

Hartford Accident and Indemnity Company (Hartford) appeals a judgment in favor of plaintiff-appellee Cement Asbestos Products Company (Capco) in a suit against Hartford as surety on a contractor's payment and performance bond. Jurisdiction is based upon diversity, 28 U.S.C. § 1332. The principal on the bond, a joint venture between Yount Pipeline Constructors, Inc. and Concrete Curb and Paving, Inc. (Yount), failed to pay Capco for materials furnished under a sales contract. The trial court awarded Capco $69,518.98 damages plus 8% interest from July 31, 1974, $5,000.00 attorney's fees, and costs.

We treat three issues presented in this appeal. First we determine whether the trial court properly held Capco's business activities in Colorado were insufficient to require a certificate of authority under Colo.Rev.Stat. § 7–9–103. For those required to obtain the certificate it is a prerequisite to the foreign corporation bringing an action in the Colorado state courts or a diversity suit in the federal district court in Colorado. *Woods v. Interstate Realty Co.*, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949). The other issues concern whether the trial court was correct when it awarded attorney's fees against the surety, and whether there is substantial evidence to support the court's damage calculations.

Capco is an Alabama corporation with its principal place of business in Birmingham. It manufactures and markets cement asbestos pipe and pipe products, made in plants in Ragland, Alabama, and Van Buren, Arkansas. Its products have been sold in Colorado since 1971, with sales arranged either through designated dealers or a Capco sales representative. Dealers order directly from the Capco office as sales are made. Sales through a Capco representative are handled directly with the company. The sales representative quotes a price for a Capco product to a contractor bidding on a particular job. If that contractor is awarded the contract, the representative submits the orders either to the Alabama or Arkansas office for acceptance. The contractor knows the quoted price, and his credit with Capco, is subject to acceptance and that the sales representative's quoted price is not binding on Capco.

In this case Capco sales representative Michael James (James) gave Yount a written quote on Class 150 12- and 16-inch cement asbestos pipe, and a supplemental oral quote for 24-inch pipe of the same type. Yount was bidding on a water improvement project for Thornton, Colorado. When Yount was successful James placed the order through the Alabama office. The order was accepted, Yount's credit approved, and a valid contract completed when Capco sent a written acknowledgment to Yount. Both the quote form and the acknowledgment listed ten "Terms and Conditions of Sale" on the reverse side; apparently none were discussed between the parties.

At the time James submitted the order, he indicated to Yount that Capco had no 24-inch pipe in stock, but that production

would begin in time for Yount's construction schedule. The other pipe in the order was in stock and was shipped on schedule. Incomplete records by Yount and Capco prevent ascertaining precisely when the 24-inch pipe was shipped and received, but it is acknowledged Capco breached the contract by failing to deliver it until June.

Under Colorado law, Yount was required to execute a payment and performance bond. Colo.Rev.Stat. §§ 38–26–105, –106. Hartford was the surety on that bond in favor of the City of Thornton. Yount's contract with Thornton provided for completion of the project 120 days after February 25, 1974, the date of the contract. An extension was granted until July 9, 1974, due to a delay in obtaining an easement. In fact the job was not accepted as completed until late October, 1974. Thornton assessed liquidated damages against Yount for the additional delay. When Yount refused to pay Capco $71,518.98, and Yount became insolvent in September, 1974, Capco sought payment from Hartford. Hartford now may assert any defenses available to Yount.

I

■ The central issue in this appeal is whether Capco's business activities in Colorado required it to comply with Colo.Rev. Stat. § 7–9–103. That statute would bar a foreign corporation from bringing an action in the Colorado courts if it has not obtained a certificate of authority to do business in the state. But a foreign corporation may not be compelled to qualify under these statutes if it is engaged solely in interstate commerce. *Eli Lilly & Co. v. Sav-On-Drugs, Inc.*, 366 U.S. 276, 278, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961). Colorado courts have recognized this limitation when construing § 7–9–103 and its predecessors. *E. g., Savage v. Central Elec. Co.*, 59 Colo. 66, 148 P. 254 (1915); *Herman Bros. Co. v. Nasiacos*, 46 Colo. 208, 103 P. 301 (1909). Argument on appeal has focused upon whether the Colorado statute intends to require qualification in all cases where it is constitutionally permissible, or whether it draws a line at less than constitutional limits. Certainly the Colorado cases have discussed the problem in terms of the federal constitutional limits, which prevent the state statute from requiring that all foreign corporations whose business touches the state obtain a certificate of authority. Since we do not perceive that the cases have shifted from the constitutional lines drawn by the Supreme Court at the time those Colorado cases were determined, we assume the Colorado statute is intended to require every foreign corporation to qualify if it may do so constitutionally.

The trial court held Capco's business in Colorado was not sufficiently intrastate to bring it within the scope of § 7–9–103. We agree with that characterization. Capco's contacts with the state of Colorado were through three individuals or groups.

First, there are the authorized dealers, local independent construction supply companies, who can order pipe in their own names and accounts, or in the names of their customers, by mail or telephone, to be accepted in Alabama or Arkansas and shipped f. o. b. those manufacturing plants to the job site or, occasionally, to the dealer. The dealer receives a larger discount ordering in its own name as purchaser than when ordering for billing directly to a client, where Capco has the burden of collection. It has long been recognized that use of local soliciting agents of this sort does not involve sufficient contacts with the state to require qualification under the statutes. *Real Silk Hosiery Mills v. City of Portland*, 268 U.S. 325, 45 S.Ct. 525, 69 L.Ed. 982 (1925); *Butler Bros. Shoe Co. v. United States Rubber Co.*, 156 F. 1 (8th Cir. 1907) (involving Colorado statute).

Second, Capco has contacts with Colorado through James, its sales representative and promoter. James lives in that state, but is sales representative in several other states and a portion of Canada. Only about 30% of his time is spent in Colorado. James carries Capco's promotional materials, catalogs, etc., and uses an extra bedroom in his apartment as an office. He does no collection work on Capco accounts. Orders that

he solicits are accepted in the Birmingham office, all payments are made directly to that office, and all shipments are made f. o. b. from plants outside of Colorado.

It is well recognized that merely having a traveling salesman within the state, even one who is a resident of that state, is not sufficient contact to require a foreign corporation to qualify to do business in the state as a prerequisite to its use of the courts as plaintiff. *Crenshaw v. Arkansas*, 227 U.S. 389, 33 S.Ct. 294, 57 L.Ed. 565 (1913); *Robbins v. Taxing Dist. of Shelby County*, 120 U.S. 489, 7 S.Ct. 592, 30 L.Ed. 694 (1887); *Savage v. Central Elec. Co., supra*; *International Trust Co. v. A. Leschen & Sons Rope Co.*, 41 Colo. 299, 92 P. 727 (1907). The only additional facts which could differentiate this from the traditional "drummer" cases are that Capco pays for a WATS line, a leased car, and an answering service where James' number is listed under "Capco." We do not consider these significant departures from the sales representative cases. *Cf. International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This is not *Eli Lilly & Co. v. Sav-On-Drugs, Inc., supra*, where there was a permanent office paid for by the company, a district manager, a full-time secretary and 18 other salaried employees working out of the office.

The third source of contacts Capco has with Colorado is that it employs two "troubleshooters" who are not residents of Colorado. These men are sent out to job sites which are using Capco products, apparently upon request of the contractor attempting to install the pipe. They are primarily used if the buyer has no previous experience with Capco products, and only occasionally, apparently, have they visited job sites in Colorado. It has been held that furnishing a specialist to assist in the assemblage and erection of machinery as part of the work of installation is an appropriate incident to an interstate sale and does not justify the courts of the state in forcing the corporation to obtain a license to do business therein. *York Mfg. Co. v. Colley*, 247 U.S. 21, 38 S.Ct. 430, 62 L.Ed. 963 (1918).

*Cf. Puritan Pie Co. v. Milprint, Inc.*, 494 P.2d 850 (Colo.App.1972).

As the trial court noted, it appears that Capco has carefully designed its contacts with Colorado and other states to avoid exceeding the limits set forth in the various Supreme Court cases discussing when a state may require qualification as a foreign corporation doing business in the jurisdiction.

The two most recent Supreme Court cases on this issue are *Eli Lilly & Co. v. Sav-On-Drugs, Inc.*, 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961) already mentioned, and *Allenberg Cotton Co. v. Pittman*, 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974). As noted above, *Eli Lilly* had a significant business office in the state, quite different from the case here. *Allenberg* dealt with cotton futures, and held that contracts with local farmers to grow cotton to be delivered to local warehouses, for a brokerage firm engaged in interstate hedging transactions, was an inseparable part of an interstate transaction. We believe it supports the finding of the trial court that the intrastate activity here involved is minor and an incident only to the interstate transactions of Capco.

Appellant argues from recent cases involving taxation of foreign corporations, that if obtaining the certificate of authority is not burdensome to interstate commerce, Capco should comply. We do not consider those cases to be in point. It is generally accepted that more activity must be found for imposing a state qualification statute on a foreign corporation than is necessary for taxation or for service of process. Colorado cases recognize this distinction also. *See Norton v. Dartmouth Skis, Inc.*, 147 Colo. 436, 364 P.2d 866, 867 (1961).

Finding as we do, it is unnecessary to discuss whether Capco's later registration under § 7–9–103 relates back to the original filing of the complaint for purposes of the statute of limitations.

## II

We turn now to whether the award of attorney's fees was proper. Sec-

tions 38–26–105, –106 which require execution of a payment and performance bond do not expressly allow for attorney's fees. The general rule is that absent express statutory authority or an enforceable contract provision, attorney's fees are not recoverable. *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *F.D. Rich Co., Inc. v. Industrial Lumber Co., Inc.*, 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). Capco bases its request for fees on the terms appearing on the reverse side of the acknowledgment. Since there is no statute providing for the award, the enforceability of those contract provisions is crucial.

The Uniform Commercial Code (U.C.C.) on sales at §§ 2–201 *et seq.* provides rules of contract formation. The trial court found the contract was formed in Alabama when the order was accepted, and the parties have stipulated that Alabama has adopted the U.C.C. (as has Colorado. *See* Colo.Rev. Stat. §§ 4–1–101 *et seq.*) The general rule of § 2–207(1) provides that:

> A . . . written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional terms.

The testimony was that the terms and conditions appearing on the back of the bid forms (and the acceptance acknowledgment) were never discussed between the parties. Indeed the quote on the 24-inch pipe at issue here was oral. Therefore we cannot but consider the terms and conditions appearing on the reverse side of Capco's confirmation are "different" and "additional" within the meaning of that section.[1] Under § 2–207(2) "The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

. . . ." Both Yount and Capco must be within the definition of merchant if the attorney's fees clause is to be given effect.

Section 2–104(1) defines merchant as one "who deals in goods of the kind or otherwise . . . holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction, . . ."

Official Comment 1, treating the application of this term contemplates that both are merchants if they are "professionals in a given field," rather than as casual or inexperienced sellers or buyers. Comment 2 says the term has its roots in the " 'law merchant' concept of a professional in business. The professional status under the definition may be based upon specialized knowledge as to the goods, specialized knowledge as to business practices, or specialized knowledge as to both . . ." It says that banks or universities might be merchants.

This is not a transaction between a wholesaler and a retailer. But it is between a manufacturer of pipe and one who regularly uses pipe in major construction projects, two parties who should be professionals with specialized knowledge of the goods. This contractor performed tests on the pipe and sold some it owned to a city. In the only closely analogous case we found it was held that the merchant concept of the U.C.C. applied in a dispute between a highway construction contractor and a materials supplier. *A. & G. Constr. Co. v. Reid Brothers Logging Co.*, 547 P.2d 1207 (Alaska 1976). *Cf. Eichenberger v. Wilhelm*, 244 N.W.2d 691 (N.D.1976). We hold Yount comes within the definition of merchant and is bound by the provision for attorney's fees. Therefore the award was proper.

### III

■ The City of Thornton assessed $200 per day liquidated damages against Yount

---

1. The commentary to the U.C.C. seems expressly to treat the instant situation:

   1. This section is intended to deal with two typical situations. The one is the written confirmation, where an agreement has been reached either orally or by informal correspondence between the parties and is followed by one or both of the parties sending formal [acknowledgments or] memoranda embodying the terms so far as agreed upon and adding terms not discussed. . . .

for 100 days, or $20,000, but reduced that figure to $10,000. Thornton attributed 50 days of the delay from July 9 until its acceptance of the project in October, to Capco's late shipment of the 24-inch pipe. The trial court found that 57 days (from April 7 through June 3) of delay was caused by Capco's late shipment of the pipe, and that Yount was able to begin installation on June 3, 1974.

The trial court's award of damages is not clearly erroneous, and we therefore affirm. Testimony presented on behalf of Hartford to prove damages at trial was conflicting. Hartford attempted to prove consequential damages in the amount of $75,000 to offset the original claim by Capco of $71,518.98 plus interest. No documented evidence was presented to show overhead costs incurred due to Capco's delay, how many employees were on the job awaiting arrival of the 24-inch pipe, or that equipment was idle. Section 2–715 (Colo.Rev.Stat. 4–2–715) of the U.C.C., Comment 4, indicates that the burden of proving consequential damages lies with the buyer, and rejects any need for "mathematical certainty." However, losses must be shown by a means "reasonable under the circumstances."

Hartford did not present evidence justifying the additional 50-day delay (that Thornton did not attribute to Capco) in installation of the pipe. The evidence at trial was not clear whether the pipe was defective when shipped, or whether the breakage during testing at the job site was due to improper handling and installation procedures by Yount. Capco presented evidence that the pipe was properly tested and met industry standards when shipped. Under those circumstances we find the trial court did not err in allowing as an offsetting claim only $2,000 for Yount's expenses in removal and return of equipment to the Thornton job site when work was halted awaiting arrival of the 24-inch pipe. U.C.C. § 2–717.

For the reasons stated above, the judgment is affirmed.