Thomas W. DODGE

v.

**UNITED SERVICES AUTOMOBILE AS-
SOCIATION and Sheila F. Dodge.**

Supreme Judicial Court of Maine.

Argued June 6, 1980.

Decided July 14, 1980.

Murray, Plumb & Murray, E. Stephen Murray (orally), Ellyn C. Ballou, Portland, for plaintiff.

Richardson, Tyler & Troubh, S. Peter Mills, III, Portland (orally), for defendants.

Before McKUSICK, C. J., WERNICK and NICHOLS, JJ., and DELAHANTY, A. R. J.

McKUSICK, Chief Justice.

Plaintiff Thomas W. Dodge brought suit on a fire insurance policy against defendant United Services Automobile Association (the Company), seeking statutory penalties, attorney's fees, and damages allegedly resulting from the Company's late payment of his claim for fire loss, and raising other related claims for loss under the policy. After a jury-waived trial, the Superior Court (Cumberland County) denied all of plaintiff's prayers for relief; on plaintiff's principal claim, the justice held that it was not a violation of either the applicable insurance statute or the policy for the Company to issue a single draft made jointly payable to the three loss payees identified in the insurance policy. Plaintiff-appellant has demonstrated no reversible error in the proceedings below, and accordingly we affirm the judgment in its entirety.

The Company cross-appeals from the Superior Court's rejection of its counterclaim seeking attorney's fees as damages for plaintiff Thomas Dodge's breach of an oral

agreement to settle the insurance claim. For want of any significant authority for such a departure from the American rule, we deny the company's cross-appeal.

### The Facts

Thomas and Sheila Dodge were married in 1971. In 1974 they purchased, as joint tenants, property in Sebago known as Maple Farm, giving a mortgage to Gorham Savings Bank (the Bank). The property was insured under a policy issued by the Company, which designated Thomas Dodge and Sheila Dodge as the named insureds and the Bank as the mortgagee. In 1976, the Dodges were divorced by a District Court judgment. That judgment gave Thomas Dodge exclusive title to Maple Farm, ordered him to pay Sheila Dodge $7,000 (her share of the marital property) by September 15, 1979, and provided that in default of that obligation Maple Farm was to be sold and Sheila Dodge paid out of the proceeds. After the divorce, Thomas continued to live at Maple Farm, while Sheila moved to Calgary, Alberta.

On March 31, 1977, Maple Farm burned as an apparent result of an errant lightning bolt. The buildings had consisted of a dwelling house, a shed, and a barn—which were totally destroyed by the fire—and a garage, which was damaged in the amount of $469.10. At the time of the fire, the Dodges' homeowners' policy issued by the Company provided the following coverages on Maple Farm:

| Coverage | Amount |
| --- | --- |
| A. Main dwelling | $40,000 |
| B. Appurtenant structures | 4,000 |
| C. Unscheduled personal property | 16,000 |
| D. Additional living expenses | 8,000 |

On April 1 a local adjuster began investigating the fire loss on behalf of the Company and on June 13, 1977, delivered to Thomas Dodge the Company's draft in the amount of $40,000, representing full payment for the loss of the main dwelling (including the shed and the barn). The draft was payable to Thomas Dodge, Sheila Dodge, and Gorham Savings Bank. After a delay of some six weeks, Thomas returned the draft to the Company, declaring that it was unacceptable to him because of the presence of Sheila Dodge's name as a co-payee. He informed the Company that he did not know Sheila's whereabouts, that she would probably refuse to endorse the draft, and that in any event she no longer was a titleholder to the property by virtue of the 1976 divorce judgment. He also attempted, both personally and through his attorney, to have the Company pay the the Bank directly, by a separate draft in the amount of the mortgage debt. Meanwhile, Sheila Dodge had been in contact with the Company and had asserted an interest in the disposition of the loss proceeds.

In early August, 1977, as a result of negotiations between attorneys for Thomas Dodge, Sheila Dodge, and the Company, the attorneys arrived at an agreement on behalf of their respective clients concerning the disposition of the policy proceeds. As part of the settlement agreement, a three-payee draft for $40,000 covering the main dwelling loss was to be issued by the Company and sent to the Canadian attorney for Sheila Dodge for her endorsement; the draft was then to be returned to Thomas Dodge for his endorsement and for delivery to Gorham Savings Bank. The Company also agreed to issue a draft payable to Thomas Dodge covering his additional living expenses from the date of the fire through August 15, 1977, including reimbursement for mortgage interest expense incurred by him during that period of time because the mortgage had not been paid off.[1] On August 15, 1977, the Company

---

1. In addition to the three-payee draft for $40,000 covering the main dwelling loss and the single-payee draft covering Thomas Dodge's additional living expenses, the company issued two additional three-payee drafts in the following amounts:

(1) $468.10 for damage to the garage under the appurtenant structures coverage;
(2) $11,500 for unscheduled personal property, representing the balance of coverage remaining after previous payments to Thomas Dodge totalling $4,500.

sent Thomas Dodge's attorney a draft for $1,511.78 covering additional living expenses and soon thereafter sent the other draft to Sheila Dodge's attorney in Canada, as the parties had agreed.

However, in early September, 1977, Thomas Dodge changed attorneys and filed the present lawsuit against the Company. He later added Sheila Dodge as a defendant. The Company filed a counterclaim for specific performance of the settlement agreement and for damages resulting from Thomas Dodge's breach thereof; it also filed a cross-claim in the nature of interpleader seeking disposition of the proceeds of the policy among Thomas Dodge, Sheila Dodge, and Gorham Savings Bank. On motion prior to trial, the court on December 31, 1977, entered partial summary judgment for the Bank, ordered the Company to pay the Bank $29,889.30 on account of its mortgage on Maple Farm, and dismissed the Bank as a party to the action. A bench trial held on March 15 and 19, 1979, resulted in the judgment now on appeal to this court.

### I. Claims under the Main Dwelling Coverage

#### A. Statutory claim.

■ Plaintiff Thomas Dodge asserted at trial that he was entitled to the statutory penalties and fees provided by 24–A M.R.S.A. § 2436 (Supp.1976)[2] because the company had failed to pay the claim on the main dwelling coverage "when due"—*i. e.*, within a maximum of 60 days from its receipt of the completed proof of loss form. Plaintiff did not contend that the Company's tender of its draft on June 13, 1977, was *late* payment; rather, he contended that such tender was not an *effective* payment. He advanced at trial, and reasserts on appeal, two theories in support of that contention.

First, tender of the June 13 draft was, he says, a failure to pay the claim when due because the presence of Sheila Dodge's name on the draft made it difficult or impossible to cash; the Company should have issued a draft without her name on it promptly upon his request, or else be held liable for the statutory consequences of nonpayment. Second, the Company's refusal to issue a draft in the amount of the mortgage balance payable separately to the Bank constituted, plaintiff says, a failure to pay the claim when due and should also entitle him to recover the statutory penalties and attorney's fees.

Plaintiff cannot fruitfully maintain that the Company violated its statutory payment obligation by including Sheila Dodge's name on the June 13 draft. It is undisputed that Sheila had a legitimate and substantial insurable interest in the insured real estate. The District Court divorce judgment provided that Maple Farm was her security to assure distribution of her share

---

The parties agreed that certain portions of the proceeds were to be placed in escrow pending the resolution of claims by Sheila Dodge to both the main dwelling and personal property proceeds. Those claims have been adjudicated by the Superior Court and are not before us on appeal.

2. At the pertinent time section 2436 provided as follows:

§ 2436. **Late payment**

Claims made by a named or other person insured thereunder for payment of benefits under a policy of insurance against loss, delivered or issued for delivery within this State, are payable within 30 days of the date that the insurer receives a completed proof of loss form, any reasonably required supporting information and the amount of loss realized, but in no event shall such period of time for payment exceed 60 days where reasona-

ble proof of loss and amount of loss realized is provided. . . .

If the insurer fails to pay such claims when due, the amount of the claim shall bear interest at the rate of 1½% per month after the due date.

A reasonable attorney's fee for advising and representing a claimant on a claim or action for a claim shall be paid by the insurer if overdue benefits are recovered in an action against the insurer or if overdue benefits are paid after receipt of notice of the attorney's representation.

Nothing in this section shall prohibit or limit any claim or action for a claim the claimant shall have against the insurer.

This section was repealed and replaced by P.L. 1977, ch. 357, which provides a unitary 30-day time limit for payment of insurance claims.

of the marital property. Furthermore, Sheila Dodge was listed as a named insured on the policy. For the Company to have issued a payment draft without including her as a payee would have been in direct violation of its policy obligations to her.

■ Nor was it a violation of the statute in the circumstances here present to refuse to pay the Bank by a separate draft. The Company was obligated by its insurance contract to see that all persons having an interest in the loss proceeds were protected, and its tender of a three-payee draft was the obvious, businesslike way of accomplishing that objective. Furthermore, the method of payment selected by the Company was an effective way of protecting itself from multiple liability on a single claim.

It comes as no surprise that plaintiff is unable to cite any case or other authority disapproving of the Company's thoroughly reasonable practice. Section 2436 neither purports to prescribe nor to prohibit any particular method of payment; it merely sets forth the applicable time limits beyond which payments shall be considered overdue. The Company's tender of the three-payee draft well within those time limits was fully effective to discharge its payment obligation under the statute.

### B. Contract claim

■ Plaintiff further contends that the Company's failure to pay the mortgagee bank was a breach of the insurance contract and that he should have been awarded his damages flowing from that breach—namely, the additional interest payments he was obligated to make from the time of the fire until ultimate payment of the mortgage debt under the court order of December 31, 1977. Plaintiff relies on the mortgage clause of the policy, which provides in pertinent part:

> Loss, if any, under this policy shall be payable to the [named] mortgagee . . as interest may appear . . . .

We find it unnecessary to decide whether that provision must be construed as a promise by the Company to pay the mortgagee *directly*—by issuing a separate, single-payee draft for the balance due on the mortgage. Even assuming that the Company's failure to do so upon plaintiff's request was a breach of the quoted policy provision, a question as to which we intimate no opinion, the Company has fully reimbursed plaintiff for any additional interest expense that it would have been obligated to pay as damages. First, the August 15, 1977, draft for additional living expenses covered all mortgage interest payments made by plaintiff between the date of the fire and the date of the draft. Second, as to interest payments falling due after August 15, 1977, the Superior Court held that plaintiff was barred from asserting a claim for such damages because of his failure to carry out the settlement agreement. The lower court's logic is inescapable: If plaintiff had followed through on his settlement agreement, the Bank would have been paid off and the need for making additional mortgage payments would never have arisen. Plaintiff's claim for contract damages was correctly denied.

### II. *Appurtenant Structures Claim*

Plaintiff asserted at trial that the destruction of the barn should have been compensated from the available balance under the appurtenant structures coverage and not, as the Company had determined, as part of the $40,000 maximum benefit it paid under the main dwelling coverage. The Superior Court denied this claim, and plaintiff now asserts error in that ruling.

■ The policy provides the following coverages on the buildings at Maple Farm:

**COVERAGE A—DWELLING**

This policy covers the described *dwelling building, including additions in contact therewith*, occupied principally as a private residence.

.    .    .    .    . .

**COVERAGE B—APPURTENANT STRUCTURES**

This policy covers structures (*other than the described dwelling building, including additions in contact therewith*) appertaining to the premises and located thereon.

.    .    .    .    .

(Emphasis added) The sole disputed issue at trial was whether the barn had been "in contact [w]ith" the main dwelling. The presiding justice found as a fact that the barn had been "in physical contact" with the shed, which all parties conceded had been an extension of the main dwelling. That factual finding was well supported by the evidence and therefore was not clearly erroneous. *See* M.R.Civ.P. 52(a). We affirm the court's conclusions based upon that finding.[3]

### III. *Additional Living Expense Claim*

■ Plaintiff asserts error in the denial of his claim for additional living expenses incurred beyond August 15, 1977, and up to the date of judgment. The pertinent policy coverage provides:

> If a property loss under this policy renders the premises untenantable, this policy covers the necessary increase in living expense incurred by the Named Insured to continue as nearly as practicable the normal standard of living of the Named Insured's household for not exceeding the period of time required . . . to become settled in permanent quarters . . .

Plaintiff's claim is based on his factual contention that the expenses were incurred as a direct result of the Company's failure to pay off the mortgage on Maple Farm, as he had repeatedly requested. At several points in his testimony plaintiff stated that loan funds that would have enabled him to become settled in new quarters were available from Gorham Savings Bank once the Maple Farm mortgage was paid off; plaintiff gave every indication that he was ready, willing, and able to become settled immediately upon the fulfillment of that condition. Thus, in the position that he has consistently taken from the inception of this litigation, plaintiff apparently concedes that his additional living expenses were not

"necessary" within the terms of the policy *unless* his factual premise concerning the Company's responsibility for those expenses is sustained.

The Superior Court expressly found that the Company could not be held responsible for expenses incurred as a result of plaintiff's own refusal to abide by the settlement agreement, and plaintiff does not attack the logic of that holding on appeal. From our earlier discussion, it is apparent that the Superior Court's conclusion is supported by the evidence. Plaintiff's inability to obtain resettlement funds from the Bank was solely the result of his breach of the settlement agreement. Had that agreement been carried out by plaintiff, the mortgage would have been paid off and he would have qualified for the desired loan. Plaintiff has never asserted that the additional expenses would have been incurred had the mortgage been paid off. We agree with the justice below that it would be unfair to construe the above-quoted policy provision as a means of providing reimbursement to a defaulting claimant for the consequences of his failure to abide by a settlement agreement, when one of the very purposes of that agreement was to avoid incurring additional living expenses.

### IV. *Trial Costs*

■ The judgment provides that "[c]osts of suit are awarded to defendants . . . to be paid by plaintiff Thomas Dodge." Plaintiff asserts that he should have been allowed a portion of his costs because he was the "prevailing party" on the counterclaims of both defendants. *See* M.R.Civ.P. 54(d); 14 M.R.S.A. § 1501 (1980). As we stated in *Inhabitants of the Town of Sabattus v. Bilodeau*, Me., 395 A.2d 123, 124 (1978):

> Who is the prevailing party is to be determined by a functional analysis, rather

---

**3.** We also reject plaintiff's belated suggestion that building materials also destroyed by the fire that were intended for repairs to the barn were compensable under the appurtenant structures coverage. Under the policy, building materials are included under the same coverage as the structure for which they are in-

tended to be used. Since the barn fell within the main dwelling coverage, so too did the building materials associated with the barn. Since the full amount of the dwelling coverage was paid, no further compensation was available for the building materials in question.

than a mechanical application of . . [the rule governing costs].

By a "functional analysis" we meant that one must look at the lawsuit as a whole to determine which party was the "winner" and which the "loser." In this case, the Superior Court obviously determined that plaintiff, who obtained precisely nothing that he could not have had without litigation, was the losing party and should bear the costs of the other parties. By explicitly stating that fact in the judgment, the court below was merely seeking to avoid any possible confusion that might have resulted from the multifaceted judgment at such time as the clerk of court would be called upon to certify the costs. *See* 14 M.R.S.A. § 1519 (1980).

### V. The Company's Counterclaim for Attorney's Fees

The Company has cross-appealed the denial of its counterclaim seeking an award against Thomas Dodge of specific performance of the settlement agreement and damages for its breach. The Superior Court justice ruled that ordering specific performance was unnecessary since effectively the same result had already been accomplished by the court's disposition of the main claims asserted by Thomas Dodge. On its cross-appeal the Company recognizes that if we affirm the judgment below, there is again no need to reach the issue of specific performance.

In cross-appealing, however, the Company does contend that the Superior Court erred in denying its counterclaim seeking damages for Thomas Dodge's breach of his agreement to settle the insurance claim. Those damages consisted principally of its attorney's fees incurred in defending the suit brought by Dodge in violation of his settlement agreement. The Superior Court denied the Company's claim for damages on the ground that no authority had been cited that would support an award of attorney's fees for breach of contract, in absence of an explicit provision therefor.

In logic, attorney's fees should be recoverable as damages for breach of a settle-

ment agreement on the principle of *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng.Rep. 145 (1854). It would seem that attorney's fees "may fairly and substantially be considered as arising naturally, i.e. according to the usual course of things, from such breach of contract itself" and that they "may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it." *Id.,* quoted in *Inhabitants of Milford v. Bangor Ry. & Elec. Co.,* 104 Me. 233, 242, 71 A. 759, 763 (1908). The expectancy contracted for by both parties is freedom from litigation on the claim being settled, and attorney's fees are the principal cost of the litigation that parties seek to avoid. There is no necessary reason why the fact that attorney's fees in a suit on the principal claim are not recoverable as costs by the prevailing party should bar their recovery as damages for breach of the settlement agreement itself. That breach is a wrong separate and apart from the contract or tort claim that was settled.

■ However, the parties have cited no case authority for the award of attorney's fees for breach of a settlement agreement, and our research finds none, except a century-old decision from an Ohio intermediate court, *Scott v. Reedy,* 5 Ohio Dec. Reprint 388 (Super.Ct.1876). All sorts of controversies are routinely settled by lawyers, often by oral understandings as in the case at bar. Lawyers settle cases against the background of the American rule that firmly and with only very limited exceptions denies attorney's fees as an element of costs or damages. *See Vance v. Speakman,* Me., 409 A.2d 1307, 1311 (1979), and cases there cited. Because of the pervasiveness and vigor of the American rule making each party bear his own attorney's fees, parties to a settlement agreement—in absence of an express contractual provision to the contrary—must be taken to intend to exclude attorney's fees from the damages that otherwise would be recoverable as a foreseeable and probable consequence of a breach of the agreement.

An after-the-fact rationalization for the rule denying normal contract damages for breach of settlement agreements can also be developed from the strong public policy favoring such settlements, *see* 15A Am.Jur.2d *Compromise and Settlement* § 5 (1976). Were the rule otherwise, a lawyer would be much more wary of informal settlement discussions for fear of subjecting his client to the added expense of the opposing party's attorney's fees if it were later determined that those discussions had in fact reached the point of a binding bilateral agreement. On balance it may be preferable to encourage free settlement negotiations, undampened by the risk of the heavy damages that would be assessed in those relatively few cases where one party fails to perform his agreement.

In any event, when working out contracts for settling litigable claims, lawyers who wish to swim against the tide of the American rule are perfectly capable of including an express undertaking that the damages resulting from any breach of the settlement agreement shall include attorney's fees. *Artvale, Inc. v. Rugby Fabrics Corp.*, 363 F.2d 1002, 1008 (2d Cir.1966) (Friendly, J.). In the absence of any such specific understanding between the parties in the case at bar, we are not prepared to award attorney's fees on the Company's counterclaim for Thomas Dodge's breach of his settlement agreement.

The entry will be:

Appeal denied.

Cross-appeal denied.

Judgment affirmed.

Costs on appeal and cross-appeal allowed to defendant United Services Automobile Association.

All concurring.