**Ray E. ISAACS, et al., Plaintiffs,**

v.

**CATERPILLAR, INC., Defendant.**

**No. 88–1137.**

United States District Court,
C.D. Illinois,
Peoria Division.

Sept. 27, 1988.

Patricia Benassi, Benassi & Benassi, Peoria, Ill., George F. Galland, Jr., Davis, Barnhill & Galland, Chicago, Ill., Andrew H. Koor, Suddarth & Koor, O'Fallon, Mo., for plaintiffs.

Ted Johnson, Caterpillar, Inc., Peoria, Ill., J. Stephen Poor, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

MIHM, District Judge.

On June 21, 1988, this Court conducted oral argument on Plaintiffs' Motion to Dismiss Defendant's Counterclaim. At that time, the Court orally granted said Motion, and indicated that a written order would follow. This is that order.

## A. FINDINGS OF FACT

1. This is a lawsuit filed under the Age Discrimination in Employment Act ("ADEA") by a group of former employees of Caterpillar, Inc. Plaintiffs allege that their jobs were targeted for elimination by Caterpillar on the basis of their age and that they were in effect forced to retire or otherwise to terminate their employment by Caterpillar. Among other things, Plaintiffs allege that purported releases were obtained from them in the course of securing their departure from Caterpillar's employment. Plaintiffs allege on various factual and legal grounds that these releases are of no legal effect. Their complaint affirmatively asks this Court to invalidate these purported releases.

2. Caterpillar has filed a Counterclaim alleging that the releases are valid, and that by filing this lawsuit the Plaintiffs have breached the contract with Caterpillar allegedly embodied in these releases. The Counterclaim asserts that this alleged breach has damaged Caterpillar at least in the amount of the special payments that have been rendered to Plaintiffs pursuant to the "Statements" that contain the release language. Each Plaintiff signed such a Statement at the time of his or her departure from Caterpillar's employment. Caterpillar's Counterclaim asks that the Court award it damages against each Plaintiff for breach of contract in the amount of all payments previously made under the terms of these "Statements;" that the Court declare that Caterpillar need make no future payments under those Statements; and that the Court award Caterpillar the fees and costs incurred in defending this litigation.

3. Plaintiffs have moved to dismiss the Counterclaim pursuant to F.R.Civ.P. 12(b)(6) for failure to state a claim on which relief can be granted.

4. At the time of their separation from the Company, each Plaintiff received certain financial benefits. At the same time, each Plaintiff signed a purported release, relied on by Caterpillar as the heart of their Counterclaim, which reads as follows:

In consideration of receiving the special arrangement as described above, I release and forever discharge Caterpillar, Inc., and its subsidiaries, of and from any and all claims, causes of action, damages and liabilities whether or not known, suspected or claimed by me which I may have relating to my retirement from active employment or which are related to any act, course or thing which could have been alleged in any action based upon such employment.

This language does not contain any provision specifically promising not to file a lawsuit, or providing for damages if a lawsuit is filed that is found to be barred by the release, or providing for attorney's fees and costs. A release of this type, which merely states that claims are discharged and released, will hereinafter be referred to as a "defensive release."

5. Caterpillar's Counterclaim does not assert that Plaintiffs have filed their complaint in bad faith, or that Plaintiffs' attack on the validity of the releases is made in bad faith. Neither has Caterpillar made any such assertion in the brief it has filed defending its Counterclaim.

6. The Court has reviewed the thorough briefs filed by the parties on this motion and heard extensive oral argument on June 21, 1988.

## B. CONCLUSIONS OF LAW

1. This Court has jurisdiction of Caterpillar's Counterclaim pursuant to F.R. Civ.P. 13(a). The Counterclaim is clearly a "compulsory counterclaim" within the meaning of that rule and the cases interpreting it. Accordingly, no independent basis of federal jurisdiction is required to support it.

2. For purposes of this Motion to Dismiss, it is assumed that the facts asserted in Defendant's Counterclaim are true. *Powe v. City of Chicago*, 664 F.2d 639, 642 (7th Cir.1981).

3. The Court concludes that the legal validity of this Counterclaim is to be judged by Illinois law, except to the extent that such law may be inconsistent with the ADEA. See, *Air Line Stewards & Stewardesses Assoc. v. Trans World Airlines, Inc.*, 713 F.2d 319, 321 (7th Cir.1983). The Court takes note of authority construing releases of ADEA claims to be governed by "federal common law." *DiMartino v. City of Hartford*, 636 F.Supp. 1241, 1248–49 (D.Conn.1986). While this holding may be appropriate in construing a release that was signed as part of a specific settlement of an ADEA federal court lawsuit (as in *DiMartino*), the Court does not believe that it applies here, where the release was signed before any specific dispute had surfaced between the parties, and where the release does not specifically mention the ADEA or any other federal rights of action. In any event, however, both Caterpillar and Plaintiffs agree that there is no reason to believe that Illinois would differ from "federal common law" on the issue presented here, and this Court concurs with that view.

4. Because this case is before the Court on a Motion to Dismiss the Counterclaim, and is based on the pleadings, this Court's decision is a narrow one. Specifically, this decision does not address the validity of the release agreements themselves. The validity issue was not raised by Plaintiffs' Motion. Further, resolution of the validity of the release agreements would require findings of fact regarding circumstances surrounding their execution and the intent of the parties. Such an inquiry is inappropriate on a Motion to Dismiss based on the pleadings.

5. The Court concludes that the Motion to Dismiss should be granted for several alternative reasons.

6. The filing of a good-faith lawsuit does not constitute a breach of the agreement evidenced by that release. In the Court's view, Illinois law would follow the reasoning of *Artvale, Inc. v. Rugby Fabrics Corp.*, 363 F.2d 1002, 1008 (2nd Cir.1966), which held that, unless a covenant not to sue expressly provides for damages in the event of breach, it will be presumed to be intended for *defensive* purposes only, absent allegations that the subsequent lawsuit was brought in bad faith.

7. Caterpillar has been unable to cite a single case from Illinois or any other jurisdiction that has ever allowed a "defensive release" to be used to support an offensive damage claim for breach of contract such as alleged by Caterpillar. The Court has examined the cases cited by Caterpillar as authority for allowing damage actions for breach of a release and finds them inapposite. Most of these cases do not involve a release or covenant not to sue, nor do they discuss the right to sue for damages for

violation of them. The case most heavily relied on by Caterpillar, *Anchor Motor Freight v. Teamsters*, 700 F.2d 1067 (6th Cir.1983), *cert. denied*, 464 U.S. 819, 104 S.Ct. 81, 78 L.Ed.2d 92 (1983), involved not a defensive release but a provision in a collective bargaining agreement that specified when the parties could and could not file a lawsuit over matters previously submitted to arbitration. And the Sixth Circuit explicitly did not decide the question of whether the act of filing the suit had breached this provision of the collective bargaining agreement. 700 F.2d at 1072–73.

8. The Court also rejects the principal argument made by Caterpillar to distinguish *Artvale* and the other cases relied on by Plaintiffs. Caterpillar argues that while these cases permit a party who has signed a "defensive release" to bring a lawsuit that is limited to challenging the validity of the release itself, they do not permit a party to attach to that lawsuit the underlying cause of action the party wishes to assert. The cases themselves do not support Caterpillar's distinction. In all these cases, the plaintiff's lawsuit was not limited to a challenge of the validity of the release. Instead, the plaintiff brought an underlying claim, just as the Plaintiffs here have brought an underlying ADEA claim. Moreover, Caterpillar's argument makes no practical sense. Caterpillar is proposing that Plaintiffs litigate their case in two separate proceedings *seriatim*. Under Caterpillar's theory, Plaintiffs must first spend an extended period of time, perhaps several years, litigating the validity of their release and then, if they prevail, start a whole new lawsuit on the underlying claim that would probably take several years more to resolve. Aside from the statute of limitations and subject matter jurisdiction problems caused by such a procedure, it would lead to nearly endless litigation and would be contrary to judicial economy. This is not to say that the law is always practical, but in this situation there is no apparent reason in law, logic, or public policy why it should not be.

9. The Court also rejects Caterpillar's argument that it is entitled to proceed to determine whether the parties intended these "defensive releases" to be used for offensive purposes. Caterpillar cites no case that has allowed such a trial. Caterpillar could have drafted this release to include language giving it an offensive right of action in the event of a lawsuit. It did not include such language. The cases cited by Caterpillar are inapposite. They did not involve damage claims based on defensive releases. Instead, they involved the issue of whether a settlement document had been intended by the parties as a release (in which case it would release joint tortfeasors) or as a covenant not to sue (in which case it would not).

■ 10. The Court further concludes that even if the filing of this suit constituted a breach of these defensive releases, the damages sought by Caterpillar are unawardable for this alleged breach of contract. The only damage that can be caused by the filing of this lawsuit is the expense of defending it. *Bellefonte Re Insurance Co. v. Argonaut Ins. Co.*, 586 F.Supp. 1286, 1287 (S.D.N.Y.1984). Illinois law, however, precludes even the award of these damages. *Child v. Lincoln Enterprises, Inc.*, 51 Ill.App.2d 76, 200 N.E.2d 751, 754 (4th Dist.1964). Other jurisdictions are in accord. *Bellefonte Re Ins. Co. v. Argonaut Ins. Co., supra; Borbely v. Nationwide Mut. Ins. Co.*, 547 F.Supp. 959, 980–81 (D.N.J.1981); see also *Winchester Drive–In Theatre Inc. v. Warner Bros. Pictures Distrib. Corp.*, 358 F.2d 432, 436 (9th Cir.1966).

11. The Court rejects Caterpillar's argument that it may claim damages for "restitution" on a theory of "unjust enrichment." The only claim pleaded in Caterpillar's Counterclaim is a claim for breach of contract and resulting damages. Had Caterpillar attempted to plead an alternative theory of unjust enrichment, it is doubtful that such a claim could have been sustained. No case is cited by Caterpillar allowing use of an unjust enrichment theory to order restitution of monies paid under a defensive release agreement as a result of the filing of a good faith lawsuit challenging the release. Although Caterpillar argues that it has received "nothing" in exchange from these releases, the Court disagrees.

Caterpillar obtained Plaintiffs' departure from its employment, and it obtained releases which, if valid, may be used to defend against litigation.

12. Perhaps most importantly, the Court alternatively concludes that if state law does allow recovery of damages for breach of a defensive release, the ADEA preempts and precludes such a claim. This court concurs with the reasoning of *EEOC v. United States Steel Corp.*, 671 F.Supp. 351, 358–59 (W.D.Pa.1987), which dealt with a penalty provision in a release agreement signed by early retirees of U.S. Steel under a program similar to that at issue here. The U.S. Steel releases specifically provided that the filing of a lawsuit over the retirement would require the employee to pay back the sums he or she had received and would excuse future payments by the company. The court concluded that enforcement of this provision had the potential of deterring the bringing of good faith ADEA claims and enjoined its enforcement. In the Court's opinion, *EEOC v. U.S. Steel* cannot be meaningfully distinguished from the present case.

13. For the foregoing reasons, Plaintiffs' Motion to Dismiss the Counterclaim pursuant to F.R.Civ.P. 12(b)(6) is GRANTED and the Counterclaim is DISMISSED with prejudice.