William E. BUNNETT, Petitioner,

v.

Donald L. SMALLWOOD, Respondent.

BUNNETT/SMALLWOOD & CO., INC., Petitioner,

v.

Donald SMALLWOOD, Respondent.

No. 88SC543.

Supreme Court of Colorado, En Banc.

June 18, 1990.

Joseph P. Genchi, Estes Park, for petitioners.

Michael A. Williams, Steven D. Plissey, and Sherman & Howard, Denver, for respondent.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari in this case in order to decide if attorney fees could be awarded as damages in a case where the lawsuit was barred because of an agreement not to sue. The court of appeals held in *Bunnett v. Smallwood*, 768 P.2d 736 (Colo.Ct.App.1988), that the defendant was entitled to recover his attorney fees and costs where the legal proceedings were instituted in violation of an agreement not to sue. We reverse the court of appeals and hold that, absent a contractual agreement or statutory or rule authority, the non-breaching party to a release is not entitled to attorney fees and costs.

## I.

This case involves two consolidated appeals arising from a series of business transactions between the parties. We summarize only the facts which are relevant to the issue before us.

In 1974, William E. Bunnett and Donald E. Smallwood formed Bunnett/Smallwood & Co., Inc., a company engaged in the business of buying and selling fertilizer, feed supplements, and hay. Bunnett/Smallwood was incorporated in Texas and had its principal place of business in Colorado. Both Bunnett and Smallwood were fifty percent shareholders in the corporation.

Several points of contention arose between the two parties. In February 1984, Smallwood resigned his office at Bunnett/Smallwood and started another company in competition with Bunnett/Smallwood. Bunnett filed a claim against Smallwood in August 1984 charging that Smallwood had obtained certain raw materials by misrepresentation that he was still a Bunnett/Smallwood officer. For his part, Smallwood was concerned about his potential liability to a Texas bank for a separate personal guaranty that he had signed as a Bunnett/Smallwood officer in return for the bank extending an open line of credit to the company. Smallwood wanted to avoid liability for both the claims filed against him by Bunnett and the personal guaranty.

After previous unsuccessful negotiations, Smallwood and Bunnett met at a Denver-area restaurant on October 3, 1984 in order to discuss the Bunnett/Smallwood Company stock still owned by Smallwood. Smallwood told Bunnett that he wanted to end all of the "hassle" in exchange for giving his stock to Bunnett.[1]

The effect of the parties' informal, oral agreement was raised in the two lawsuits which were consolidated in this appeal. Smallwood contended that he received a release from liability for "any and all claims of any kind or nature which Bunnett or Bunnett/Smallwood had against Smallwood." Bunnett, on the other hand, claimed that Smallwood received a release from liability for the August 1984 claim, but not for any other claims. It is undisputed that after Bunnett received the stock, he dropped the August 1984 suit against Smallwood and notified the Texas bank that Smallwood was no longer personally liable for Bunnett/Smallwood debts.

Bunnett, however, instituted two other lawsuits against Smallwood after the meeting of October 3, 1984. In the first case, *Bunnett v. Smallwood*, No. 86CA1302 (*Bunnett* case), Bunnett claimed that Smallwood converted partnership property and Smallwood counterclaimed for breach of the October 1984 agreement. In the second case, *Bunnett/Smallwood & Co. v. Smallwood*, No. 87CA0469 (*Bunnett/Smallwood* case), Bunnett claimed that Smallwood had breached his fiduciary duty to Bunnett/Smallwood prior to February 1984, usurped a corporate opportunity, and tortiously interfered with a Bunnett/Smallwood contract. Smallwood moved for summary judgment and dismissal on the ground that Bunnett was collat-

erally estopped from contesting the exclusivity of the October 1984 release.

The jury in the *Bunnett* case held against Bunnett on June 20, 1986, finding that Bunnett had breached a contract which released Smallwood of all future claims, and granted damages to Smallwood of $30,000, equal to his attorney fees and costs for defending both the *Bunnett* case and *Bunnett/Smallwood* case. The trial court in the *Bunnett/Smallwood* case granted Smallwood's motions concluding that because of the judgment in the *Bunnett* case, the doctrine of collateral estoppel barred relitigation of a vital issue involved in the *Bunnett/Smallwood* case. Both cases were appealed. The court of appeals consolidated the appeals and affirmed the trial court judgments. The validity of the settlement agreement or Bunnett's breach are not before us. Rather, we granted certiorari in order to address the following question: whether the prevailing party in a lawsuit can recover attorney fees and costs for breach of an agreement not to sue.

## II.

■■■ The jury found that the agreement between Bunnett and Smallwood constituted a release of all claims and controversies.[2] A release is the relinquishment of a vested right or claim to the person against whom the claim is enforceable. *Neves v. Potter*, 769 P.2d 1047 (Colo.1989); *see also Restatement (Second) of Contracts*, § 284 (1981). Furthermore, a release is an agreement to which general contractual rules of interpretation and construction apply. *Rocky Mountain Ass'n of Credit Mgmt. v. Hessler Mfg. Co.*, 37 Colo. App. 551, 553 P.2d 840 (1976).

---

**1.** The parties testified to slightly different versions of Smallwood's "hassle" comment which both parties agreed was made after some initial small talk. According to Bunnett, Smallwood pulled his Bunnett/Smallwood stock certificates from his pocket and said "I've got enough money. This company has served a useful purpose for me, and I'm tired of hassling on the deal, and I'm just giving you the stock." When Bunnett questioned why Smallwood wanted to give him the stock, Smallwood said, "Well, I'm just tired of.this deal, and I have got my own compa-

ny going, and there is no use hassling anymore." Smallwood testified that when Bunnett raised the subject of the stock, Smallwood said, "Bill, the hassling we have been doing is getting us nowhere. I would like for you to accept this stock and just end all of the hassle, all of it."

**2.** The parties have used the terms "release," "covenant not to sue" and "settlement agreement" interchangeably. For purposes of this opinion, we will use the term "release."

■ Smallwood's claim for attorney fees and costs after his successful defense must be analyzed against the background of the caselaw, statutes, and court rules regarding the award of attorney fees and costs. In the absence of a statute or private contract to the contrary, attorney fees and costs generally are not recoverable by the prevailing party in a breach of contract case. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616–17, 44 L.Ed.2d 141 (1975); *Cement Asbestos Prods. Co. v. Hartford Accident & Indem. Co.,* 592 F.2d 1144, 1148 (10th Cir.1979); *Buder v. Sartore,* 774 P.2d 1383, 1390 (Colo.1989); *Beebe v. Pierce,* 185 Colo. 34, 38, 521 P.2d 1263, 1265 (1974). Requiring each party in such cases to pay its own legal expenses is based on the well-established American rule. *See generally* 1 M. Derfner & A. Wolfe, *Court Awarded Attorney Fees* ¶ 1.01 (1990). Numerous rationales are advanced in support of the American rule. For example, attorney fees and costs are not considered actual damages "because they are not the legitimate consequences of the tort or breach of contract sued upon." *Taxpayers for the Animas–LaPlata Referendum v. Animas–LaPlata Water Conservancy Dist.,* 739 F.2d 1472, 1480 (10th Cir.1984) (construing Colorado law). Additional rationales include that the rule promotes equality among litigants, does not penalize parties for merely asserting their legal positions, and does not substantially burden judicial administration. M. Derfner & A. Wolfe, at ¶ 1.03.

In affirming the trial court judgments, the court of appeals reasoned that, if a party must defend a suit despite a release, then the attorney fees and costs which the party incurs are the measure of actual damages because they represent the direct consequences of the breach. *Bunnett,* 768 P.2d at 739 (citing *Anchor Motor Freight, Inc. v. International Bhd. of Teamsters,* 700 F.2d 1067 (6th Cir.), *cert. denied* 464 U.S. 819, 104 S.Ct. 81, 78 L.Ed.2d 92 (1983)). As such, the court of appeals concluded that Smallwood was entitled to compensatory damages sufficient to place him in the position in which he would have been if the breach had not occurred. *Id.; see also General Ins. Co. v. City of Colorado Springs,* 638 P.2d 752, 759 (Colo.1981); *Combined Communications Corp. v. Bedford Motors, Inc.,* 702 P.2d 281, 282 (Colo. Ct.App.1985); *Kniffin v. Colorado W. Dev. Co.,* 622 P.2d 586 (Colo.Ct.App.1980) (damages awarded in contract dispute to make the nonbreaching party whole).

■ The court of appeals followed a line of cases which has held that attorney fees are recoverable as damages for breach of a release. *See Anchor Motor Freight, Inc.,* 700 F.2d 1067; *Widener v. Arco Oil and Gas Co.,* 717 F.Supp. 1211 (N.D.Tex.1989); *Borbely v. Nationwide Mut. Ins. Co.,* 547 F.Supp. 959 (D.N.J.1981); *Desroches v. Ryder Truck Rental, Inc.,* 429 So.2d 1010 (Ala.1983); *Colton v. New York Hospital,* 53 A.D.2d 588, 385 N.Y.S.2d 65 (1976); *Scott v. Reedy,* 5 Ohio Dec. Reprint 388 (Ohio 1876). These cases provide little explanation for their holdings, and several of the cases merely state that a party breaching a release "may be compelled to respond in damages." *Colton,* 53 A.D.2d at 589, 385 N.Y.S.2d at 66. *See also Borbely,* 547 F.Supp. at 977. We find two general theories underlying the award of attorney fees in the jurisdictions which have followed this practice. First, several cases maintain that the traditional American rule, providing that each party to a lawsuit pays its own attorney fees and costs, is not applicable in this situation because the attorney fees are the subject of the lawsuit itself rather than an award to the successful litigant. *Anchor Motor Freight, Inc.,* 700 F.2d at 1072 (citing *Scott v. Local Union 377,* 548 F.2d 1244, 1266 (6th Cir.), *cert. denied,* 431 U.S. 968, 97 S.Ct. 2927, 53 L.Ed.2d 1064 (1977)).

Secondly, it is argued that attorney fees should be awarded for breach of a release based on equitable principles. For example, the court in *Widener* stated, "[b]ecause the purpose of entering into a release is to avoid litigation, the damages a releasor suffers when the release is breached are its costs and attorneys' fees incurred in defending against the wrongfully brought action." 717 F.Supp. at 1217.

Moreover, in urging us to affirm the court of appeals, Smallwood argues that to hold otherwise would create unfair results, would enable some defendants to evade damages despite wrongdoing, and would preclude damaged parties from receiving redress or being made whole for their losses. We reject the theories underlying the cases followed by the court of appeals.

As to the first theory, we agree that there is an exception to the American rule when the attorney fees are the subject of the lawsuit. Properly construed, however, this exception applies to cases such as suits brought by attorneys to enforce their fee agreements. The exception should not be construed to extend to an action which is defended on the grounds that the action is barred by a release. The subject of the action in such a case is the claim or claims pled by the plaintiff. Attorney fees and costs necessarily are incurred as part of the defense based on breach of a release but they are not the subject of the suit. Smallwood's position in this respect is no different from that of any other defendant who prevails in a lawsuit and does not have a successful counterclaim for damages. Unless we are prepared to abandon the American rule and award attorney fees and costs to the prevailing party, it is difficult to construct any principled way to contain the "exception" to the American rule which would be created by characterizing attorney fees as the subject of the lawsuit because a release is raised as a defense.

We also reject the equitable argument for awarding attorney fees. Although Smallwood argues that he has been damaged by Bunnett's unlawful breach of the release and that failure to award attorney fees would mean that he has received nothing in exchange for the agreement, we disagree. Smallwood has obtained a valid release which he has employed as a successful defense in the *Bunnett* and *Bunnett/Smallwood* cases. The intent of the release having now been adjudicated, the release may be used as an effective defense to possible future litigation. *See Isaacs v. Caterpillar, Inc.,* 702 F.Supp. 711 (C.D.Ill.1988). Furthermore, parties who enter into a release are aware of the poten-

tial legal costs if the agreement is breached. It is not unfair to require each party to pay its own legal costs if the parties did not find it necessary to include a fee shifting provision when they entered into the agreement.

## III.

■ Contrary to the line of cases upon which the court of appeals relied, most jurisdictions have applied the American rule barring the award of attorney fees and costs to cases involving a breach of a release. Such jurisdictions award attorney fees for breach of release only if an agreement or statute specifically authorizes such fees. *See Isaacs v. Caterpiller, Inc.,* 702 F.Supp. 711; *Dodge v. United Services Auto Ass'n,* 417 A.2d 969 (Me.1980); *Child v. Lincoln Enter., Inc.,* 51 Ill.App.2d 76, 200 N.E.2d 751 (1964). Alternatively, the courts which adhere to the American rule will award attorney fees only if the suit is brought in obvious breach of a release or is brought in bad faith which is one of the established exceptions to the American rule. *See Artvale, Inc. v. Rugby Fabrics Corp.,* 363 F.2d 1002 (2d Cir.1966); *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,* 757 F.2d 523 (2d Cir.1985); *Quill Co., Inc. v. A.T. Cross Co.,* 477 A.2d 939 (R.I.1984). Discussion of the leading cases explains the analyses developed by these jurisdictions.

In *Dodge v. United Services Auto Ass'n,* 417 A.2d 969, 975, the Maine Supreme Court discussed the policy reasons against awarding attorney fees for breach of a release:

> Lawyers settle cases against the background of the American rule that firmly and with only very limited exceptions denies attorney's fees as an element of costs or damages. (Citation omitted.) ... Because of the pervasiveness and vigor of the American rule making each party bear his own attorney's fees, parties to a settlement agreement—in absence of an express contractual provision to the contrary—must be taken to intend to exclude attorney's fees from the dam-

ages that otherwise would be recoverable as a foreseeable and probable consequence of a breach of the agreement. The court reasoned that there were strong public policy reasons for denying normal contract damages for breach of settlement agreements. For example if such contract damages were allowed, a lawyer conceivably would be more "wary of informal settlement discussions for fear of subjecting his client to the added expense of the opposing party's attorney's fees if it were later determined that those discussions had in fact reached the point of a binding bilateral agreement." *Id.* at 976. Hence, the court found it preferable to encourage free settlement negotiations without the risk of heavy damages which could result in the relatively rare case where one party failed to perform his agreement. *Id.* Finally, the court stated that "lawyers who wish to swim against the tide of the American rule are perfectly capable of including an express undertaking that the damages resulting from any breach of the settlement agreement shall include attorney's fees." *Id.*

*Artvale, Inc. v. Rugby Fabrics Corp.*, 363 F.2d 1002, and its progeny follow a slightly different test for awarding attorney fees for breach of a release. In *Artvale*, the Second Circuit Court of Appeals held that the question of whether a party who has breached a release is liable for litigation expenses is to be solved by seeking to determine what the parties intended by their contract. However, in the absence of contrary evidence, liability for attorney fees and costs would be imposed only for suits brought in obvious breach of the release or otherwise brought in bad faith. Also, in *Winchester Drive–In Theater, Inc. v. Warner Bros. Pictures Distrib. Corp.*, 358 F.2d 432 (9th Cir.1966), the court did not support an absolute bar on the recovery of attorney fees, but rather held that when the very existence of a release is disputed in good faith, attorney fees and costs may not be recovered.

In our view, attorney fees and costs should not be awarded for breach of a release unless (1) the agreement expressly provides that remedy, or (2) such an award is permitted by statute or court rule. The first alternative is consistent with normal rules of contract interpretation and the second alternative, given Colorado's extensive and detailed provisions for awarding attorney fees, should serve to adequately protect the non-breaching party. Our state has various statutory and rule exceptions to the American rule regarding attorney fees which allow attorney fees to be imposed for suits brought in bad faith. In general, section 13–17–101, 6A C.R.S. (1987), provides that attorney fees may be recovered at the discretion of the trial court if it is determined that the bringing or defense of an action has been "substantially frivolous, substantially groundless, or substantially vexatious." Furthermore, section 13–17–101 instructs the courts to construe the provisions of the article regarding attorney fees liberally. *See Western United Realty, Inc. v. Isaacs*, 679 P.2d 1063 (Colo.1984) (attorney fees awarded for bad faith which includes conduct which is arbitrary, vexatious, abusive, or stubbornly litigious, and conduct aimed at unwarranted delay or disrespectful of truth and accuracy). Also, our rules of civil procedure explicitly authorize the award of attorney fees in certain circumstances. *See, e.g.*, C.R.C.P. 3(a) (civil action vexatiously commenced); C.R.C.P. 11 (willful violation of rule regarding the signing of pleadings); C.R.C.P. 30(g) (failure to attend deposition or failure to serve a subpoena for attendance to deposition); C.R.C.P. 37(a)(3) (failure to respond to discovery requests); C.R.C.P. 37(c) (failure to admit the genuineness of any documents or the truth of requests for admission); C.R.C.P. 56(g) (affidavits made in bad faith); C.R.C.P. 107(d) (sanction for civil contempt). Consequently, the trial courts have ample authority to award attorney fees in appropriate cases.

In adopting a test for determining when attorney fees and costs are properly awarded in this context, we reject the rule of *Artvale* allowing such award in the case of a clear breach of a release. We do so because that standard seems to invite litigation over whether a breach was "clear." Furthermore, our existing statutes and

rules are adequate to protect the interests of the non-breaching party by, for example, allowing the award of attorney fees if the suit is "substantially frivolous" or "substantially groundless." We also decline to follow the language of *Winchester* which awarded attorney fees unless the very existence of the release was disputed in good faith. Again, this standard invites unnecessary litigation and is covered in part by our statutes and rules imposing attorney fees for suits brought in bad faith.

The facts in the instant case illustrate why attorney fees should not be recoverable absent express contractual, statutory or rule liability. The oral agreement here was imprecise at best. What each party understood by the term "hassle" was not spelled out. Only two disputed matters actually were discussed by the parties and Bunnett disposed of both matters as requested by Smallwood. There was no description of any other claims which Bunnett was to surrender and the parties did not specifically discuss or agree that liability or consequences would result from a breach of the agreement. Bunnett and Smallwood were experienced businessmen who presumably knew the importance of formalizing an agreement if they meant it to be binding. In the absence of a plain, unambiguous agreement for the award of attorney fees and costs, we will not create such a remedy for the parties. The existing law providing for the award of attorney fees and costs upon a finding that the litigation is frivolous or groundless is adequate to protect the prevailing party's interest in the truly unmeritorious case. But where, as here, the nature and scope of the agreement itself is ambiguous, award of attorney fees and costs in the absence of an express contractual provision would be unfair. A party should not be penalized because its judgment about the scope of agreement simply proves to be wrong. Here, there was no finding that Bunnett acted in bad faith or that attorney fees and costs were justified under the relevant statutes or rules. Hence, the award was erroneous.

We think that the general rule which allows attorney fees and costs only where there is contractual agreement or the award is authorized by statute or rule promotes settlement negotiations and greater contractual autonomy among parties and their attorneys. If parties and lawyers wish to abandon the general rule and provide for the award of attorney fees for a breach of an agreement not to sue, they can do so expressly within the agreement.

In conclusion, we hold that the non-breaching party to a release who successfully defends a lawsuit brought in violation of the agreement is not entitled to the award of attorney fees and costs absent contractual, statutory or rule authorization for such award. The judgment of the court of appeals is reversed on this issue, with directions to remand to the trial court for dismissal of the counterclaim in accord with this opinion.