Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2018 CO 43**

**No. 17SC2, <u>Guarantee Trust Life Ins. Co. v. Estate of Casper</u>—Unreasonable Delay and Denial of Insurance Benefits—Abatement—Actual Damages.**

In this case, the supreme court considers the operation of section 13-20-101, C.R.S. (2017), Colorado's survival statute, and section 10-3-1116(1), C.R.S. (2017), a statutory cause of action for the unreasonable delay or denial of insurance benefits. The supreme court also considers the scope of the trial court's authority to enter a final judgment <u>nunc pro tunc</u>. In this case, the original plaintiff died after receiving a favorable jury verdict, but before that verdict had been reduced to a written and signed entry of final judgment. The defendant then moved to substantially reduce the jury award, arguing that the survival statute barred certain damages. The supreme court concludes that the survival statute does not limit the jury's verdict in favor of the original plaintiff. The supreme court further concludes that an award of attorney fees under section 10-3-1116(1) is a component of the "actual damages" of a successful claim under that section and that, although the survival statute did not limit the damages awarded by the jury, the trial court abused its discretion by entering a final judgment <u>nunc pro tunc</u>. The court of appeals' judgment is affirmed in part and reversed in part.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2018 CO 43

### Supreme Court Case No. 17SC2
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA2423

### Petitioner:

Guarantee Trust Life Insurance Company, an Illinois corporation,

v.

### Respondent:

The Estate of Michael Dean Casper, by and through Nick Casper, personal representative.

### Judgment Affirmed in Part and Reversed in Part
*en banc*
May 29, 2018

**Attorneys for Petitioner:**
Hall & Evans, L.L.C.
Kevin E. O'Brien
Alan Epstein
Malcolm S. Mead
      *Denver, Colorado*

**Attorneys for Respondent:**
Levin Sitcoff PC
Bradley A. Levin
Nelson A. Waneka
      *Denver, Colorado*

Keating Wagner Polidori Free PC
Zachary C. Warzel
      *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Trial Lawyers Association**
The Gold Law Firm, LLC
Michael J. Rosenberg
    *Greenwood Village, Colorado*

**CHIEF JUSTICE RICE** delivered the Opinion of the Court.

¶1    In this case, we consider the operation of section 13-20-101, C.R.S. (2017), Colorado's survival statute, and section 10-3-1116(1), C.R.S. (2017), a statutory cause of action for the unreasonable delay or denial of insurance benefits.  We also consider the scope of the trial court's authority to enter a final judgment nunc pro tunc.  The original plaintiff, Michael Dean Casper, now deceased, received a favorable jury verdict awarding damages for breach of contract, bad-faith breach of insurance contract, and unreasonable delay or denial of insurance benefits under section 10-3-1116(1).  The jury also awarded Casper substantial punitive damages.  Nine days after the jury returned its verdict—but before the trial court reduced that verdict to a written and signed judgment—Casper died.  Consequently, the defendant, Guarantee Trust Life Insurance Company ("GTL"), moved to substantially reduce the verdict, arguing that the survival statute barred certain damages.  The trial court denied the motion, and the court of appeals affirmed.  We granted GTL's petition to review the court of appeals' decision.[1] We now conclude that the survival statute does not limit the jury's verdict in favor of Casper.  We also conclude that an award of attorney fees and costs under section 10-3-

---

[1] We granted certiorari to review the following issues:

1.  Whether the survival statute, section 13-20-101, C.R.S. (2016), limits the damages recoverable when the plaintiff dies three months before the court enters judgment but nine days after the jury enters its verdict.
2.  Whether a judgment rendered after the plaintiff's death can be entered nunc pro tunc to a date before death, when the amount of attorney fees and costs to be awarded as damages under section 10-3-1116, C.R.S. (2016), was not determined until after death.
3.  Whether attorney fees and costs awarded under section 10-3-1116, C.R.S. (2016), constitute "actual damages" to be counted when calculating punitive damages under section 13-21-102, C.R.S. (2016).

1116(1) is a component of the "actual damages" of a successful claim under that section. Finally, we conclude that although the survival statute does not limit the damages awarded by the jury, the trial court abused its discretion by entering a final judgment on October 30, 2014, nunc pro tunc to July 15, 2014. Therefore, we affirm the court of appeals' decision in part and reverse in part.

## I. Facts and Procedural History

¶2    Casper sued GTL alleging breach of contract, bad-faith breach of an insurance contract, and statutory unreasonable delay or denial of insurance benefits under section 10-3-1116(1). On July 15, 2014, the jury returned a verdict in favor of Casper on each claim; in addition to compensatory damages, it awarded him substantial punitive and non-economic damages. The same day it received the verdict, the trial court recognized that Casper, who was suffering from cancer, was in poor health and immediately made an oral order indicating the court's intent that the verdict become a judgment. Specifically, the trial court stated, "[T]he verdict is received by the court and the clerk of the court is instructed to enter the verdict in the court registry . . . . I'm entering judgment." Nine days later—before the oral order of the court had been entered as a written and signed order as required by C.R.C.P. 58—Casper died. Casper's Estate was then substituted as the plaintiff in place of Casper. On October 30, 2014, the trial court entered a signed and written judgment in favor of Casper's Estate for nearly two million dollars; it dated this written judgment nunc pro tunc to July 15, 2014, the date the jury returned the verdict in favor of Casper.

4

¶3 After Casper's death, GTL filed a motion to amend the judgment and asked the court to exclude attorney fees and costs in its calculation of "actual damages" and also argued that the survival statute required a severe reduction in the award by the jury. The trial court disagreed and GTL appealed. The court of appeals affirmed the trial court's decisions. Now, GTL asks us to reverse the court of appeals and hold that Casper's Estate is entitled only to $50,000 in damages under the breach-of-contract claim. GTL also reiterates its argument that the trial court erred by including the award of attorney fees granted under section 10-3-1116(1) in its calculation of punitive damages and that the trial court erred by entering final judgment nunc pro tunc to the date of verdict.

## II. Standard of Review

¶4 This case presents several questions of statutory interpretation, which we review de novo. Goodman v. Heritage Builders, Inc., 2017 CO 13, ¶ 5, 390 P.3d 398, 401. And we review the trial court's entry of final judgment nunc pro tunc for an abuse of discretion. See Perdew v. Perdew, 64 P.2d 602, 604 (Colo. 1936) ("Application for . . . a judgment [nunc pro tunc] is addressed to the sound discretion of the court.").

## III. Analysis

¶5 We begin by considering the survival statute itself. Next, we measure each claim for relief brought by Casper against that statute and conclude that the survival statute, which was enacted to blunt the common law rule on abatement, does not bar any of Casper's original claims for relief, nor does it require any limitations on damages. We then consider the award of attorney fees and court costs available pursuant to section

10-3-1116(1) and determine that such an award constitutes "actual damages" within the meaning of section 13-21-102(1)(a), C.R.S. (2017), the punitive damages statute. Finally, we consider the trial court's decision to enter final judgment on October 30, 2014, <u>nunc pro tunc</u> to July 15, 2014, the date the jury returned its verdict. We conclude that, because an award of attorney fees and court costs under section 10-3-1116(1) is considered actual damages, and those actual damages were not fixed by the trial court by July 15, 2014, the trial court could not have entered final judgment <u>nunc pro tunc</u> to that date.

### A. The Survival Statute

¶6    In considering the operation of the survival statute, we begin, as we must, with the text of the statute itself. <u>Goodman</u>, ¶ 7, 390 P.3d at 401. The survival statute provides that:

> All causes of action, except actions for slander or libel, shall survive and may be brought or continued notwithstanding the death of the person in favor of or against whom such action has accrued, but <u>punitive damages shall not be awarded nor penalties adjudged after the death of the person against whom such punitive damages or penalties are claimed</u>; and, <u>in tort actions based upon personal injury, the damages recoverable after the death of the person in whose favor such action has accrued shall be limited</u> to loss of earnings and expenses sustained or incurred prior to death and shall not include damages for pain, suffering, or disfigurement, nor prospective profits or earnings after date of death.

§ 13-20-101(1) (emphases added). We note that the survival statute provides that all actions survive the death of either party except actions for slander or libel. <u>Id.</u> Casper brought multiple claims for relief, none of which were for slander or libel, so the actions themselves clearly survived his death. However, the survival statute also limits the

6

damages that are available in two scenarios, even when the underlying action survived. It is those damages limitations that are most relevant to our decision in this case.

¶7    Because Casper brought multiple claims for relief, we ask first whether the survival statute and its damages limitations apply broadly over entire lawsuits or more narrowly over individual claims. We conclude that the survival statute acknowledges that a plaintiff's suit can contain multiple categories of claims, some of which may wholly survive and others of which may be limited. Our system of adversarial litigation certainly permits, if not encourages, the inclusion of multiple theories of liability within a particular lawsuit. See C.R.C.P. 8(e)(2) ("A party may also state as many separate claims or defenses as he has . . . ."). Of course, the survival statute speaks of "causes of action," not theories of liability or claims for relief. However, we conclude that "cause of action" as used in the survival statute references individual claims with individual remedies, not a lawsuit as a whole. Indeed, the legislature characterized the claim under section 10-3-1116, for example, as an "action" and explicitly created that action "in addition to . . . other actions available." § 10-3-1116(4). GTL itself appears to share our view of the survival statute, as it concedes that the Estate may receive the damages for GTL's breach of contract, suggesting that the survival statute addresses each theory of liability individually.[2]

¶8    Although the survival statute permits all but two causes of action to survive the death of either party, it does limit the damages available to a successful litigant in two

---

[2] A claim for punitive damages presents an additional wrinkle to interpreting the survival statute given the claim's status as an ancillary or auxiliary claim. See infra Part III.B.; Palmer v. A.H. Robbins Co., 684 P.2d 187, 213–14 (Colo. 1984).

primary scenarios: (1) when punitive damages and penalties are at issue ("penalty limitation"); and (2) in tort actions based on personal injury ("personal-injury limitation"). § 13-20-101(1). We address these two limitations in turn.

¶9    The penalty limitation affects punitive damages and penalties and states that "punitive damages shall not be awarded nor penalties adjudged after the death of the person <u>against whom</u> such punitive damages or penalties are claimed." <u>Id.</u> (emphasis added). So, by the statute's plain terms, this limitation could not possibly apply in this case because GTL—the party "against whom such punitive damages or penalties" were claimed—still exists.[3]

¶10   We recognize that in <u>Kruse v. McKenna</u>, 178 P.3d 1198, 1200 (Colo. 2008), we intimated that the statute's limitation on penalties and punitive damages applies when <u>either</u> party dies. If we were to apply that interpretation of the survival statute, Casper's recovery, or at least portions of it, would be barred by the survival statute. <u>See</u> <u>Warren v. Liberty Mut. Fire Ins. Co.</u>, No. 05–cv–01891–PAB–MEH, 2011 WL 1103160, at *9 (D. Colo. Mar. 24, 2011) ("<u>Kruse</u> found that, if a <u>plaintiff's</u> claims were 'penalties,' they would not survive."). The primary issue in <u>Kruse</u> was whether a claim under the Telephone Consumer Protection Act was either remedial or penal. 178 P.3d at 1200–01. That issue was critical because we held that a remedial action could be assigned to another party, while a penal action could not. <u>Id.</u> at 1200. We noted that "to determine whether a claim is assignable under Colorado law, we look to whether it survives the

_____

[3] Because GTL clearly still exists as a party to this lawsuit, we need not consider when the "death" of a corporate entity occurs in the context of the survival statute.

8

death of the person originally entitled to assert the claim." Id. (citing Micheletti v. Moidel, 32 P.2d 266, 267 (Colo. 1934)). We went on to conclude that because the statute was penal, it was not assignable, assuming that the penalty limitation became operable in the event of a plaintiff's death. See id. at 1202. That assumption effectively ignored the statutory text providing that punitive damages are unavailable when the defendant dies. See § 13-20-101(1) (providing that punitive damages and penalties are not available "after the death of the person against whom such punitive damages or penalties are claimed"). And, because we must take the statutory text as it is and give meaning to each word, Pineda-Liberato v. People, 2017 CO 95, ¶ 22, 403 P.3d 160, 164, that conclusion was erroneous. Accordingly, to the extent our decision in Kruse failed to give meaning to the plain language of the survival statute, that decision is overruled. Our reading of the survival statute announced today not only more properly complies with the text of the survival statute, but also makes practical sense. If a hypothetical cause of action is punitive in nature, and the defendant who was due to face some punishment (presumably to encourage a change in future behavior) dies, the social utility of the punishment is eliminated. However, if the plaintiff is the deceased party, the social utility of punishing the defendant remains. Consequently, we now hold that the survival statute limits punitive damages and penalties awarded and adjudged only after the death of the "person against whom such punitive damages or penalties are claimed." § 13-20-101(1).

¶11 The personal-injury limitation, however, operates differently. One crucial difference is that the personal-injury limitation acts to limit the damages recoverable in

9

tort actions based upon personal injury.  Id.  In addition, however, it becomes effective not after the death of the party against whom an award is rendered, but after the death of the party "in whose favor such action has accrued."  Id.  Again, not only is the statutory text clear, but it also comports with practical considerations.  Tort actions are generally intended to make an injured party whole.  However, no amount of damages intended to account for pain, suffering, or disfigurement, will act to make a deceased party whole.  See Espinoza v. Gurule, 356 P.2d 891, 892 (Colo. 1960); Kling v. Phayer, 274 P.2d 97, 98 (Colo. 1954).  Because Casper, the initial plaintiff, has died, the personal-injury limitation is potentially applicable in this case.  As a result, we consider it closely below.

¶12    Having examined the text of the survival statute, we now consider each of the four claims brought by Casper and determine whether each claim is affected by the survival statute.

## B.  Casper's Claims for Relief

### 1.  Breach of Contract

¶13    Casper's breach-of-contract claim clearly survives, and the Estate is entitled to the complete award of non-duplicative damages awarded by the jury pursuant to that claim.  The breach-of-contract claim is clearly not an action for libel or slander, so it survived Casper's death.  Moreover, the penalty limitation is not relevant because a breach-of-contract claim is not a claim for punitive damages or some other penalty, and GTL, the defendant, is still a party to the dispute.  Nor is the personal-injury limitation relevant because a breach-of-contract claim is clearly not a "tort action based upon

10

personal injury." See Tort, Black's Law Dictionary (10th ed. 2014) ("A civil wrong, other than breach of contract, for which a remedy may be obtained, usually in the form of damages . . . .").

## 2. Section 10-3-1116

¶14 Turning now to Casper's statutory claim under section 10-3-1116, we reach a similar conclusion. Again, Casper's claim is clearly not a claim for slander or libel, so the action itself survived Casper's death. Next, we conclude that neither damages limitation applies to Casper's statutory claim. Not only is GTL still in existence, thus eliminating the possibility that the penalty limitation acts to limit any recovery under Casper's statutory claim, but under our decision in Rooftop Restoration, Inc. v. American Family Mutual Insurance Co., 2018 CO 44, ¶ 15, __ P.3d __, a claim under section 10-3-1116 is not a claim for punitive damages or a penalty. Clearly, the penalty limitation does not limit Casper's statutory claim. Nor does the personal-injury limitation apply because a claim under section 10-3-1116(1)—which seeks recovery of unreasonably delayed or denied insurance benefits—is not a "tort action based upon personal injury." § 13-20-101(1). While Casper did put forth evidence of personal injuries, that evidence was not required for success on his statutory claim, nor was it required to calculate the damages awarded to him under the statute. Indeed, all that he was required to prove for his statutory claim was that GTL unreasonably delayed or denied a benefit owed to him. Because personal injury is wholly irrelevant to a claim under section 10-3-1116(1), such a claim is not a "tort action based upon personal

11

injury." Therefore, the survival statute does not bar the Estate's recovery under section 10-3-1116(1).

### 3. Bad-Faith Breach of Insurance Contract

¶15 Next, we consider Casper's claim for bad-faith breach of insurance contract. Again, because the party against whom this judgment was rendered is still present, and because this claim is not for punitive damages or penalties, the penalty limitation does not apply. However, the personal-injury limitation provides a closer call. Clearly, Casper, the party in whose favor such action accrued, has died. But, even assuming (without deciding) that a claim for bad-faith breach of insurance contract is a "tort action based on personal injury," we ultimately conclude that the personal-injury limitation does not act to limit Casper's damages for bad-faith breach of insurance contract.

¶16 The personal-injury limitation limits the damages "recoverable after the death of the person in whose favor such action has accrued." § 13-20-101(1). GTL contends that the survival statute limits damages if the plaintiff dies before judgment because the common law prevented the abatement of a cause of action only once judgment had been entered. See Publix Cab Co. v. Colo. Nat'l Bank of Denver, 338 P.2d 702, 707 (Colo. 1959) ("At very early common law all actions died with the actors."). But the survival statute represents an intentional departure from the common law rules, see Publix, 338 P.2d at 710–11 (discussing the difference between the common law rule of survival and Colorado's survival statute), and the statute makes no mention of judgment as the event that triggers the limitations found in the survival statute, § 13-20-101(1). Indeed, the

12

personal-injury limitation limits only damages "recoverable" after the death of the plaintiff. And if the damages at issue were "recovered" prior to the death of the plaintiff, then those damages would no longer be "recoverable," rendering the personal-injury limitation irrelevant. Thus, we must interpret the term "recoverable" in the context of the survival statute.

¶17 The primary definition of "recover" reads: "To get back or regain in full or in equivalence." Recover, Black's Law Dictionary (10th ed. 2014). The Estate argues that the statutory term "recoverable" cannot mean that damages are recovered only once they are actually paid to the prevailing party because such a rule would mean that if a party were to die during an appeal, the survival statute would act to limit the damages available to that party under the personal-injury limitation—a harsher result than what would occur under the common law. Because the survival statute was adopted to temper the harshness of the common law rule, we also reject that interpretation. See Publix, 338 P.2d at 712 (noting that the survival statute curtailed the common law rule against survival). Instead, we look to the second definition, which defines "recover" as "to obtain (relief) by judgment or other legal process." Recover, Black's Law Dictionary (10th ed. 2014). In this case, Casper did obtain a verdict through legal process, namely a complete trial during which the jury awarded him substantial damages under his claim for bad-faith breach of insurance contract. Indeed, the jury trial—with the jury as sole factfinder in this case—was the only legal process that could fix an award of damages on Casper's claim for bad-faith breach of insurance contract and, after it had done so, any and all factual issues raised by that claim were resolved. Consequently, we

13

conclude that Casper recovered his damages for bad-faith breach of insurance contract within the meaning of the survival statute when the jury returned its verdict on that claim. Because Casper was still alive when he recovered his damages under his claim for bad-faith breach of insurance contract, those damages were no longer "recoverable," and the personal-injury limitation does not act to reduce the damages awarded by the jury pursuant to that claim.

## 4. Punitive Damages

¶18 Finally, we consider the jury's substantial punitive damages award. GTL argues that the punitive damages award is governed by the personal-injury limitation, not the penalty limitation, beginning from the premise that the suit as a whole is a tort action based on personal injury. From that premise, GTL argues that the personal-injury limitation enumerates an <u>exclusive</u> list of damages that are recoverable in a tort action based on personal injury, and that because that list does not include punitive damages the award of punitive damages is barred. We disagree and conclude instead that Casper's claim for punitive damages is governed by the penalty limitation. First, it is worth remembering that GTL seems to concede that one lawsuit can encompass multiple types of causes of action, some subject to the survival statute and some not, because GTL concedes that Casper can still recover on his breach-of-contract claim. And GTL expends little effort explaining why Casper's claim for punitive damages attaches to his claim of bad-faith breach of insurance contract, the only claim that is arguably a tort claim based on personal injury, rather than the other claims brought by Casper. In other words, GTL fails to explain why Casper's lawsuit should be

considered a tort action based on personal injury, rather than one based on breach of contract or some other theory. Furthermore, GTL's reliance on <u>Burron's Estate v. Edwards</u>, 594 P.2d 1064 (Colo. App. 1979), is misplaced. Although that case held that punitive damages were barred by the personal-injury limitation, the underlying causes of action were for assault and battery, meaning the entire case was plainly a "tort action based on personal injury." <u>Id.</u> at 1065. Casper's case, by contrast, features multiple causes of action, each with their own unique character.

¶19 Therefore, we instead conclude that the penalty limitation—which specifically addresses punitive damages—covers Casper's claim for punitive damages here, not the personal-injury limitation. Our resolution avoids the need to determine whether the award of punitive damages is in some sense attached to one of Casper's particular claims and recognizes that, as discussed above, the two damages limitations serve distinct purposes: the penalty limitation ensures that the party who is deserving of punishment is still alive prior to levying punitive damages, while the personal-injury limitation ensures that the party to be made whole after a successful tort claim is still living and able to be made whole. Finally, we note that although a claim for punitive damages can be brought only in an amended complaint, § 13-21-102(1.5)(a), it requires a separate instruction by the court and specific findings from the jury, § 13-21-102(1)(a), and is not formally attached to or predicated on any specific claim. Therefore, we conclude that the survival statute limits punitive damages only when "the person against whom such punitive damages . . . are claimed" has died, § 13-20-101(1), regardless of whether the plaintiff also brings a tort action based on personal injury.

15

¶20 Applying that conclusion here, we necessarily hold that Casper's award of punitive damages survived his death because GTL—the party against whom punitive damages were claimed—did not die.

¶21 In sum, we conclude that Casper's claims, and the accompanying damages awards, survived his death wholly intact because the survival statute did not apply to those claims.

### C. Attorney Fees and Court Costs

¶22 We next consider the interplay between an award of attorney fees and court costs under section 10-3-1116(1) and an award of punitive damages. GTL first argues that attorney fees and costs awarded under section 10-3-1116(1) are not "actual damages," meaning such fees and costs cannot be considered when calculating punitive damages, because an award of attorney fees and costs under section 10-3-1116(1) constitutes a penalty. Our decision in Rooftop, announced today, forecloses that argument. As we explained in Rooftop, the text and structure of the statutory scheme within which section 10-3-1116 resides indicates that the legislature did not intend that section to operate as a penal statute, despite the punitive aspect of the statutory scheme. ¶ 15, __ P.3d at __. We now turn to GTL's remaining argument that we have previously held that attorney fees and costs are not actual damages.

¶23 We have repeatedly affirmed that Colorado typically subscribes to the "American Rule" under which each party in a contract or tort suit is responsible for funding their own legal burden. E.g., Bunnet v. Smallwood, 793 P.2d 157, 160 (Colo. 1990). However, that general rule is subject to exception if the contract in question calls

16

for a deviation from that rule or if the legislature dictates an alternative arrangement through statute. See id. Indeed, in Bunnet we held that under the American Rule, and in the absence of any contractual or statutory mandate to the contrary, attorney fees and costs were not "actual damages" because they were "not the legitimate consequences of the tort or breach of contract sued upon" and thus were not recoverable. Id. (quoting Taxpayers for the Animas–LaPlata Referendum v. Animas–LaPlata Water Conservancy Dist., 739 F.2d 1472, 1480 (10th Cir. 1984)). The two conclusions found in Bunnet—that attorney fees are not recoverable in the typical breach of contract or tort suit and that attorney fees and costs are not actual damages where they are not the "legitimate consequence" of the suit—indicate that the inverses are also true. In other words, when there is a contractual or statutory basis for the recovery of attorney fees, they are recoverable. And when that recovery is the "legitimate consequence" of the suit, the fees and costs are deemed to be actual damages.

¶24 Section 10-3-1116(1) provides a cause of action for the delay or denial of a covered insurance benefit without a reasonable basis. In structuring that cause of action, the legislature included both the recovery of reasonable attorney fees and court costs and the recovery of two times the covered benefit in the same subsection, indicating that the recovery of attorney fees is, quite clearly, a "legitimate consequence" of such a suit. Moreover, the award of attorney fees and court costs in such a claim is not discretionary. See § 10-3-1116(1). Instead, if an insured can satisfy the elements for recovery laid out in section 10-3-1115, C.R.S. (2017), they are entitled to both remedies

17

laid out in section 10-3-1116(1): an award of attorney fees and court costs, and two times the covered benefit, both of which qualify as actual damages.

¶25 Our conclusion today does not dictate that attorney fees and court costs are always recoverable or are always considered "actual damages." Instead, an award of attorney fees can operate as a hybrid form of recovery, in some cases operating as actual damages and in others as ordinary costs. See Ferrell v. Glenwood Brokers, Ltd., 848 P.2d 936, 941 (Colo. 1993). And in some cases, an award of attorney fees and court costs may not be a "legitimate consequence" of the cause of action, meaning those fees and costs would not be actual damages. But in this instance, we hold that the legislature intended the recovery of attorney fees and court costs to be a legitimate consequence of a successful claim under section 10-3-1116(1). Consequently, it was appropriate for the trial court to consider those attorney fees and court costs as actual damages when calculating the permissible amount of punitive damages owed to the Estate.

### D. The Trial Court's Entry of Judgment <u>Nunc Pro Tunc</u>

¶26 The trial court reduced the verdict to a written and signed order of final judgment on October 30, 2014, several months after Casper's death. However, that order of final judgment was entered <u>nunc pro tunc</u> to July 15, 2014, the date the jury returned its verdict. In passing, the court of appeals approved the entry of final judgment <u>nunc pro tunc</u> because it concluded that Casper was legally entitled to judgment on July 15, 2014. We disagree with that conclusion and instead determine that final judgment could not have entered on July 15, 2014, because the court had yet to

fix an award of attorney fees and costs which, as explained above, are a component of actual damages under section 10-3-1116(1).[4]

¶27    The doctrine of <u>nunc pro tunc</u> permits a court to enter an order, such as an order of final judgment, with an effective date earlier than the actual date of entry.  An entry of judgment <u>nunc pro tunc</u> to a certain date is appropriate when the cause was ripe for judgment on that earlier date.  <u>Perdew</u>, 64 P.2d at 604.  The doctrine of <u>nunc pro tunc</u> is often used to ameliorate harm done to a party by court delays or clerical errors.  <u>See</u> <u>Robbins v. A.B. Goldberg</u>, 185 P.3d 794, 796–97 (Colo. 2008).  Under C.R.C.P. 54(a), "judgment" means a "decree or order to or from which an appeal lies."  And typically, an appeal lies only from a final judgment that leaves nothing further for the court to do in order to determine the rights of the parties involved.  <u>Harding Glass Co. v. Jones</u>, 640 P.2d 1123, 1125 n.2 (Colo. 1982).

¶28    In this case, although the jury had fully resolved three of Casper's four claims for relief when it delivered its verdict, Casper was not yet entitled to a final, appealable judgment on that day because the trial court had yet to fix an award of attorney fees and costs under section 10-3-1116(1).  True, we have previously held that an appeal will lie and final judgment is appropriate even if the trial court has yet to fix an award of attorney fees or costs.  <u>Baldwin v. Bright Mortg. Co.</u>, 757 P.2d 1072, 1074 (Colo. 1988).

---

[4] GTL contends that this conclusion should affect the operation of the survival statute. However, as we explained above, the personal-injury limitation operates to limit the damages "recoverable" in a tort action based on personal injury; its operation does not turn on the date of judgment. § 13-20-101(1).  Still, we address the trial court's entry of final judgment <u>nunc pro tunc</u> because it is relevant to the calculation of pre- and post-judgment interest. § 13-21-101, C.R.S. (2017).

And C.R.C.P. 58(a) provides that the "[e]ntry of judgment shall not be delayed for the taxing of costs." But an award of attorney fees and costs under section 10-3-1116(1) is not a portion of costs and instead represents actual damages. See supra Part III.C. Therefore, until those fees had been established by the court, Casper was not entitled to a final, appealable judgment. Accordingly, we conclude that the trial court abused its discretion by entering final judgment nunc pro tunc to July 15, 2014.

## IV. Conclusion

¶29 Accordingly, the judgment of the court of appeals is affirmed in part and reversed in part.