The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
December 5, 2019

## 2019COA178

**No. 18CA1559, *Sharon v. SCC Pueblo* — Damages — Survival of Actions — Personal Injury Limitation**

A division of the court of appeals addresses whether, under Colorado's survival statute, section 13-20-101, C.R.S. 2019, a decedent's estate or representative can recover damages for the decedent's "pain, suffering, or disfigurement" in a personal injury action, when a person brings such an action and recovers such damages before he dies, he dies while the judgment is on appeal, and the judgment is later reversed on appeal. The division concludes that those noneconomic damages are not recoverable by the estate or representative in a new trial because the prior recovery has been nullified and the survival statute bars recovery of such damages by or on behalf of a deceased plaintiff.

Court of Appeals No. 18CA1559
Pueblo County District Court No. 13CV30574
Honorable Jill S. Mattoon, Judge

Leland Sharon, as Co-Special Administrator of the Estate of James Edmond Sharon, and Joyce Jones, as Co-Special Administrator of the Estate of James Edmond Sharon,

Plaintiffs-Appellants and Cross-Appellees,

v.

SCC Pueblo Belmont Operating Company, LLC, d/b/a Belmont Lodge Health Care Center, and SavaSeniorCare, Consulting LLC,

Defendants-Appellees and Cross-Appellants.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE J. JONES
Fox and Tow, JJ., concur

Announced December 5, 2019

Reddick Moss, PLLC, Brent L. Moss, Brian D. Reddick, Robert W. Francis, Little Rock, Arkansas, for Plaintiffs-Appellants and Cross-Appellees

Gordon & Rees, LLP, John R. Mann, Thomas B. Quinn, Denver, Colorado, for Defendants-Appellees and Cross-Appellants

¶ 1    Colorado's survival statute, section 13-20-101, C.R.S. 2019, provides that a person's claims against another (except those for slander or libel) survive that person's death.  But the damages a decedent's representative can recover may be limited: as now relevant, a representative can recover damages for economic losses but can't recover damages for the decedent's "pain, suffering, or disfigurement" if the action is one for personal injuries.  So if a person brings a personal injury action but dies before recovery of damages, the result under the statute is plain enough — the representative can recover damages for loss of earnings and expenses, but not damages for pain, suffering, or disfigurement.  Likewise, when a person brings such an action and recovers damages for pain, suffering, or disfigurement before he dies, he dies while the judgment is on appeal, and the judgment is later affirmed on appeal, the result is equally plain — the previous recovery stands.  But what if, in the latter situation, the judgment isn't affirmed but is instead reversed on appeal?  Can the decedent's representative recover damages for pain, suffering, or disfigurement in the event of a new trial?  This case presents that question.

1

¶ 2    Relying on the statute's plain language, as well as settled law on the effect of a reversed judgment, we answer that question "no." We therefore affirm the district court's judgment for defendants, SSC Pueblo Belmont Operating Company, LLC, doing business as Belmont Lodge Health Care Center (Belmont Lodge), and its affiliate SavaSeniorCare Consulting, LLC (Consulting), and against plaintiffs, Leland Sharon and Joyce Jones, as co-special administrators of James Edward Sharon's estate.

## I.    Background

¶ 3    Mr. Sharon suffered multiple ailments during his stay at Belmont Lodge, a nursing facility.  He sued Belmont Lodge; Consulting; and SavaSeniorCare Administrative Services, LLC (Administrative Services) for negligence.[1]  A jury ruled in Mr. Sharon's favor, finding that all three defendants operated the nursing facility as a joint venture, and that, as a joint venture, they had been negligent.  But, pursuant to the court's instruction, the jury didn't determine which particular defendant had been

---

[1] Mr. Sharon initially asserted four claims against defendants, but the court dismissed the other three claims.

negligent. It awarded Mr. Sharon noneconomic ($300,000) and punitive ($3,000,000) damages on his negligence claim based primarily on his pain and suffering.[2]

¶ 4    Defendants appealed. They contended that Administrative Services and Consulting couldn't be liable to Mr. Sharon as joint venturers and didn't independently owe him a duty of care. During that appeal, Mr. Sharon died, and the current plaintiffs were substituted as the plaintiffs in the case. A division of this court reversed the judgment, concluding that a joint venture didn't exist between defendants and that Administrative Services didn't owe an independent duty of care to Mr. Sharon. Because the division wasn't able to determine from the jury's verdict if the jury had found any particular defendant independently negligent, the division reversed the entire judgment and ordered a retrial of Mr. Sharon's negligence claim against only Belmont Lodge and Consulting. *Sharon v. SCC Pueblo Belmont Operating Co.*, (Colo.

---

[2] The district court reduced the punitive damages award to $300,000. *See* § 13-21-102(1), C.R.S. 2019.

App. No. 14CA2006, Sept. 8, 2016) (not published pursuant to C.A.R. 35(e)).

¶ 5    On remand, Belmont Lodge and Consulting moved for summary judgment and for a determination of a question of law, arguing that under Colorado's survival statute, the representatives could not recover noneconomic or punitive damages, the only types of damages Mr. Sharon had sought. Ultimately, the district court agreed with them, and after plaintiffs stipulated that they sought only noneconomic and punitive damages, the court entered judgment for Belmont Lodge and Consulting.

## II.    Discussion

¶ 6    Plaintiffs contend that the district court erred by applying the survival statute, for two primary reasons. First, they say that applying this statute in these circumstances allows "the very same common law result that the survival statute was intended to modify." Second, they argue that under the language of the statute, the restrictions on recovery don't apply where a party recovers before dying, even if that judgment is later reversed on appeal.

¶ 7    We reject both arguments.

## A.     Standard of Review

¶ 8     At bottom, both of plaintiffs' arguments turn on our interpretation of the survival statute.  We review such issues de novo.  *Colo. Oil & Gas Conservation Comm'n v. Martinez*, 2019 CO 3, ¶ 19.

## B.     Applicable Law

¶ 9     Colorado's survival statute provides in relevant part as follows:

> All causes of action, except actions for slander or libel, shall survive and may be brought or continued notwithstanding the death of the person in favor of or against whom such action has accrued, but punitive damages shall not be awarded nor penalties adjudged after the death of the person against whom such punitive damages or penalties are claimed; and, in tort actions based upon personal injury, the damages recoverable after the death of the person in whose favor such action has accrued shall be limited to loss of earnings and expenses sustained or incurred prior to death and shall not include damages for pain, suffering, or disfigurement, nor prospective profits or earnings after date of death.

§ 13-20-101(1).

¶ 10     The survival statute limits the damages that a representative of a deceased party can recover "in two primary scenarios: (1) when punitive damages and penalties are at issue ('penalty limitation');

5

and (2) in tort actions based on personal injury ('personal-injury limitation')." *Guarantee Tr. Life Ins. Co. v. Estate of Casper*, 2018 CO 43, ¶ 8. The penalty limitation applies only after the defendant's death, while the personal-injury limitation applies only after the plaintiff's death. *Id.* at ¶ 11. Because no defendant (or tortfeasor) in this case has died, the penalty limitation is irrelevant to the issues before us. (Plaintiffs' recovery of punitive damages is barred for a different reason discussed below.) We construe only the personal-injury limitation, which precludes a decedent's representative from recovering damages for pain, suffering, or disfigurement, commonly referred to as noneconomic damages.

¶ 11 In construing a statute, we begin by looking to the statute's language, applying the plain and ordinary meanings of the words and phrases used therein. *Martinez*, ¶ 19. When the language is clear, we apply it as written, without resorting to other principles of statutory interpretation. *Id.*

### C. Analysis

¶ 12 "At very early common law all actions died with the actors." *Publix Cab Co. v. Colo. Nat'l Bank of Denver*, 139 Colo. 205, 214, 338 P.2d 702, 707 (1959). "[T]o blunt [this] common law rule on

6

abatement," the General Assembly enacted the survival statute. *Estate of Casper*, ¶ 5.  The express language of the survival statute provides that all actions, except actions for defamation, survive the plaintiff's death.  And the statute allows the decedent's estate or personal representative to stand in his shoes "to prevent certain actions or causes of action already accrued from abating by reason of the death of either of the parties."  *Brown v. Stookey*, 134 Colo. 11, 14, 298 P.2d 955, 957 (1956) (emphasis omitted).

¶ 13     But the survival statute doesn't entirely abrogate the common law rule, at least insofar as damages are concerned.  "[I]n tort actions based upon personal injury," the damages available to a successful litigant are subject to the personal-injury limitation, which limits recoverable damages to "loss of earning and expenses sustained or incurred" before the injured party's death.  § 13-20-101(1).  And the statute expressly bars recovery of "damages for pain, suffering, or disfigurement" and "prospective profits or earnings after" the plaintiff's death.  *Id.*; *Estate of Casper*, ¶ 11.

¶ 14     "A different rule applied at common law, however, when the plaintiff died *after* judgment[.]"  *Sullivan v. Delta Air Lines, Inc.*, 935 P.2d 781, 784 (Cal. 1997).  Under that rule, "the death of the

plaintiff after judgment, and pending disposition of a writ of error or appeal in the nature of a writ of error, will not affect the judgment." *Ahearn v. Goble*, 90 Colo. 173, 176, 7 P.2d 409, 410 (1932) (quoting *Fowden v. Pac. Coast S.S. Co.*, 86 P. 178, 179 (Cal. 1906)). So any damages recovered before the plaintiff's death remained recoverable (subject to the important caveat discussed below). This rule rested on the notion that

> "an action is not abated by the death of a party after the cause of action has been merged in a final judgment and while the judgment stands, even though the judgment is based on a cause of action which would not survive the death of a party before judgment. In such case, the doctrine of abatement does not apply."

*Sullivan*, 935 P.2d at 784 (quoting 1 C.J.S. *Abatement and Revival* § 127, at 172); *see also Ahearn*, 90 Colo. at 177, 7 P.2d at 410 ("A cause of action ceases to exist on being merged in a judgment or decree, and so long as the judgment or decree remains in force the doctrine of abatement is without application." (quoting *F.A. Mfg. Co. v. Hayden & Clemons, Inc.*, 273 F. 374, 378 (1st Cir. 1921))); *Akers v. Akers*, 84 Tenn. 7, 12 (1885) (the judgment is merely "suspended and is presumed to be valid until it is shown to be erroneous" and vacated or annulled). The California Supreme Court has held that

8

California's survival statute, which is similar to ours, doesn't abrogate this common law rule. *Sullivan*, 935 P.2d at 792. And the Colorado Supreme Court appears to have taken the same view in *Estate of Casper*, ¶ 16 ("[T]he personal-injury limitation limits only damages 'recoverable' after the death of the plaintiff. And if the damages at issue were 'recovered' prior to the death of the plaintiff, then those damages would no longer be 'recoverable,' rendering the personal-injury limitation irrelevant.").

¶ 15 But note the caveat to this rule: it applied only so long as the judgment allowing recovery stood. *Sullivan*, 935 P.2d at 785; *Ahearn*, 90 Colo. at 177, 7 P.2d at 410. In this case, the judgment embodying Mr. Sharon's recovery did not stand; it was reversed.[3] So if the common law rule applied, Mr. Sharon's representatives could no longer pursue his negligence claim at all. *See Sullivan,*

---

[3] The survival statute makes no mention of "judgment." § 13-20-101(1), C.R.S. 2019; *Guarantee Tr. Life Ins. Co. v. Estate of Casper*, 2018 CO 43, ¶ 16. Instead of obtaining a judgment, the plaintiff must "recover" before his death. *Estate of Casper*, ¶ 17. The plaintiff in *Estate of Casper* recovered "within the meaning of the survival statute" when he "obtain[ed] a verdict through legal process, namely a complete trial during which the jury awarded him substantial damages under his claim[.]" *Id.*

935 P.2d at 785 n.1 ("[t]he plaintiff's death during an appeal nevertheless abate[s] a cause of action for personal tort" if the judgment in the plaintiff's favor is reversed on appeal (citing 1 C.J.S. *Abatement and Revival* § 127, at 173)); *Fowden*, 86 P. at 179 ("[T]he effect of such reversal would be to vacate the judgment, and the case would then stand in the same position as though no judgment had ever been given, in which event defendant might successfully contend that no further proceedings could be had."); *Hetfield v. Mortimer*, 210 N.W. 326, 327 (Mich. 1926) (the plaintiff's death pending appeal, paired with reversal of the judgment on the tort claim, abated the plaintiff's claim).[4]

---

[4] Plaintiffs misread the California Supreme Court's decisions in *Sullivan v. Delta Air Lines, Inc.*, 935 P.2d 781 (Cal. 1997); *Sherwin v. Southern Pacific Co.*, 145 P. 92 (Cal. 1914); and *Fowden v. Pacific Coast Steamship Co.*, 86 P. 178 (Cal. 1906), as holding that, under the common law, if a plaintiff dies while a case is on appeal and the judgment in his favor is reversed on appeal, the plaintiff's representative may prosecute the claim on remand. Those cases, however, say that the judgment stands if it is upheld on appeal; if it isn't, the plaintiff's claim is abated. *Sullivan*, 935 P.2d at 784-86 & n.1 (in the case of death after judgment, the action is not abated "while the judgment stands"; it is abated if the judgment "was reversed on the appeal"); *Sherwin*, 145 P. at 93 (if an order granting a defendant's motion for a new trial is reversed on appeal, the judgment in the plaintiff's favor stands); *Fowden*, 86 P. at 179 (reversal of the judgment on appeal puts "the case . . . in the same

¶ 16    Under the survival statute, however, Mr. Sharon's negligence claim survived his death.  But did the damages his representatives seek to recover?  They did not.  We reach this conclusion by applying the well-settled law on the effect of a reversal of a judgment to the language of the statute.

¶ 17    Under Colorado law, if a judgment is reversed, the parties are put in the same position they were in before the judgment was rendered.  *Schleier v. Bonella*, 77 Colo. 603, 605, 237 P. 1113, 1113 (1925); *Bainbridge, Inc. v. Douglas Cty. Bd. of Comm'rs*, 55 P.3d 271, 274 (Colo. App. 2002) (reversing a judgment returns the parties to "the same positions they were in before the filing of the first action").  Thus, when an appellate court reverses a judgment, "upon remand, that judgment no longer exists."  *Bainbridge*, 55 P.3d at 274.  Indeed, a reversed judgment is "without any validity, force, or effect, and ought never to have existed."  *Butler v. Eaton*, 141 U.S. 240, 244 (1891); *see also Shilts v. Young*, 643 P.2d 686, 688 (Alaska 1981); *Cent. Mont. Stockyards v. Fraser*, 320 P.2d 981,

---

position as though no judgment had ever been given, in which event defendant might successfully contend that no further proceedings could be had").

11

991 (Mont. 1957) ("To reverse a judgment or order means to overthrow it by a contrary decision, to make it void. When a judgment or order is reversed it is as if never rendered or made."); *Burns v. Daily*, 683 N.E.2d 1164, 1171 (Ohio Ct. App. 1996); *Moore v. N. Am. Van Lines*, 462 S.E.2d 275, 276 (S.C. 1995) (a reversal of a judgment on appeal nullifies the judgment below, leaving the case as if no judgment had been rendered). And critically, the reversal of the judgment also nullifies "an award that is dependent on that judgment for its validity." *Bainbridge*, 55 P.3d at 274; *see also Oster v. Baack*, 2015 COA 39, ¶ 18. Therefore, as a legal matter, when a judgment is reversed on appeal, it is as if no recovery was had.

¶ 18     In this case, then, the prior division's reversal of the judgment put the parties in the same position they were in before the entry of the original judgment — the prior judgment (and underlying recovery) had no continuing legal effect.[5]

---

[5] This is what is meant when the courts say that reversing a judgment puts the parties in the position they were in before judgment. It doesn't mean that the court treats a deceased plaintiff as if he is still alive.

¶ 19 Plaintiffs argue that applying this understanding of a reversed judgment to the survival statute has the same practical effect as the common law rule of abatement (*i.e.*, all actions die with the parties). But that isn't so. As discussed, under the statute, Mr. Sharon's negligence claim wasn't extinguished upon his death, even though he died while the judgment was on appeal. His damages were, however, limited; the noneconomic damages sought by his representatives aren't recoverable.[6]

¶ 20 Plaintiffs' reliance on *Estate of Casper v. Guarantee Trust Life Insurance Co.*, 2016 COA 167, ¶ 23, *aff'd in part and rev'd in part,*

---

[6] The purpose of this limitation seems plain enough. Economic damages compensate a plaintiff for expenses, lost income, and the like. Unless the plaintiff's estate or representative is able to recover such damages, the plaintiff's heirs will inherit less of the fruits of the plaintiff's life's work than they would have absent the defendant's actions. But the same can't be said about noneconomic damages — those for pain and suffering and similar injuries. Such damages are entirely personal to the plaintiff, and are intended to make the plaintiff whole. "However, no amount of damages intended to account for pain, suffering, or disfigurement, will act to make a deceased party whole." *Estate of Casper*, ¶ 11; *see County of Los Angeles v. Superior Court*, 981 P.2d 68, 78 (Cal. 1999) (a decedent's estate can't recover damages for a decedent's pain, suffering, or disfigurement because those "injuries [are] strictly personal to the decedent and therefore not transmissible to the estate").

2018 CO 43, is misplaced. In that case, the plaintiff obtained a jury verdict awarding him substantial damages. But before the district court entered a final judgment, the plaintiff died. *Id.* at ¶ 3. As discussed, the supreme court ultimately held that the plaintiff had recovered before he died — the jury's verdict was a recovery within the meaning of the survival statute. 2018 CO 43, ¶ 17. Unlike in this case, however, the judgment wasn't reversed on appeal, and so the recovery stood.

¶ 21    Plaintiffs offer several policy arguments for why representatives of a plaintiff who survives through recovery of noneconomic damages but dies pending the appeal should be able to seek those same damages on retrial in the event the original judgment is reversed. But they should direct those arguments to the General Assembly. Our job isn't to move or erase lines drawn by the General Assembly, but to enforce them. *See Samuel J. Stoorman & Assocs., P.C. v. Dixon*, 2017 CO 42, ¶ 11 ("When a statute is unambiguous, public policy considerations beyond the statute's plain language have no place in its interpretation."); *Ruybalid v. Bd. of Cty. Comm'rs*, 2017 COA 113, ¶ 18 ("[M]atters of

public policy are better addressed by the General Assembly," not this court.), *aff'd*, 2019 CO 49.[7]

¶ 22    Because plaintiffs don't seek recovery of any awardable actual damages, they can't recover punitive damages.  Section 13-21-102(1)(a), C.R.S. 2019, provides that a plaintiff must be awarded actual damages before he may recover punitive damages.  *Harding Glass Co. v. Jones*, 640 P.2d 1123, 1127 (Colo. 1982) ("[B]y its own terms section 13-21-102 has no application in the absence of a successful underlying claim for actual damages."); *see Ferrer v. Okbamicael*, 2017 CO 14M, ¶ 44 ("Exemplary damages do not present a separate, distinct cause of action, but rather, depend on an underlying claim for actual damages."); *White v. Hansen*, 837 P.2d 1229, 1236 (Colo. 1992) (Generally, "actual damages, even if only nominal, must be shown by the evidence *and awarded* to the plaintiff on the underlying negligence claim before there can be a basis for an exemplary damage award.") (emphasis added).

---

[7] To the extent plaintiffs argue that the fact the case proceeded under section 13-1-129, C.R.S. 2019 — which dictates preferential trial dates in certain circumstances — has some effect on the application of the survival statute, we don't see any connection.

¶ 23    In sum, the survival statute bars the noneconomic damages that plaintiffs seek.  Plaintiffs' inability to recover such damages, coupled with their decision not to seek economic damages, in turn bars their recovery of punitive damages.

## III.   Conclusion

¶ 24    The judgment is affirmed.

JUDGE FOX and JUDGE TOW concur.